[L. A. No. 6616. In Bank.—October 14, 1921.]

JOHN S. CHAMBERS, as Controller, etc., Respondent, v. ROSE SKEEL MUMFORD, Appellant.

[1] INHERITANCE TAX—NONRESIDENT TESTATOR—SITUS OF CHOSES IN ACTION.—The interest of a nonresident testator in the proceeds of a promissory note, acquired by contract and held in this state, does not constitute "property within this state," under sections 1 and 2 of the Inheritance Tax Act of 1913 (Stats. 1913, p. 1066), and it is not subject to an inheritance tax in view of the rule in this state that the *situs* of choses in action follows the domicile of the owner.

APPEAL from a judgment of the Superior Court of Los Angeles County. James C. Rives, Judge. Reversed.

The facts are stated in the opinion of the court.

Newlin & Ashburn for Appellant.

James L. Atteridge, John W. Carrigan and Edwin H. Pennock for Respondent.

SLOANE, J.—This appeal involves the liability to an inheritance tax in the state of California of certain property interests passing to the defendant and appellant, Rose Skeel Mumford, under the last will of her deceased husband. Both the decedent and the appellant were at the time of the former's death nonresidents of the state of California, having their domicile in New Jersey. The property interest involved consisted of a contractual interest held for the testator by trustees, also nonresidents of California, in the proceeds of a promissory note executed by a resident of California to the defendant, Title Insurance and Trust Company of Los Angeles, in its capacity as administrator of the estate of one Arcadia B. deBaker, deceased. The Trust Company is a California corporation, and the note at all times was held, owing, and payable in the state of California, and was secured by a mortgage on California real estate.

The interest of testator, appellant's husband, in the proceeds of this note arose under the following conditions. He with other persons claiming to be interested as heirs in the

deBaker estate, in order to prosecute their claims advantageously, assigned their respective interests growing out of such claims to trustees, who were empowered to act for them. These trustees have likewise at all times involved in this proceeding been nonresidents of the state of California.

These claims of heirship were litigated in the superior court in the county of Los Angeles, but met with an adverse ruling from which an appeal was taken to this court. During the pendency of this appeal a contract of settlement was entered into with the deBaker heirs, or most of them, whereby these heirs agreed to procure a complete assignment of this note and a distribution thereof from the deBaker estate to these trustees. Such was the status of the transaction at the time respondent succeeded to her husband's interests at the time of his death.

This contract was thereafter carried out and the note was distributed to these nonresident trustees, and subsequently the amount of the note was collected by the Title Insurance Company, which continued to hold the note after distribution, as the agents of the nonresident trustees.

The principal sum of the note was $704,439.50, of which amount Mumford's interest was an undivided one-sixth.

At the time of the commencement of this action the note had been collected and sufficient of the amount due the respondent from her husband's share remained in the hands of the defendant Title Insurance Company to satisfy the inheritance tax demanded.

No question is raised as to the amount of or liability for this tax, if it is a proper charge against the interest which passed to respondent under her husband's will.

In determining the liability of this interest under the inheritance tax laws of California, the matter may be simplified without at all changing the legal aspect of the case by eliminating from consideration all facts involving the nonresident trusteeship, and the deBaker estate. The contract with the trustees was for the sole use and benefit of the beneficiaries of that trust, and the interest thereby created did not pass to them as heirs of the deBaker estate but by virtue of the contract in settlement of the litigated claim.

The fact that the property interest in question was acquired by assignment from the deBaker heirs and afterward

vested in the assignees by virtue of a decree in the deBaker estate presents no different condition than if the rights had been created by contract and assignment from the original payee of the note. Neither is there any different situation created by the fact that the Mumford interest was held by a trustee than if the entire transaction had been carried on directly with Mumford in person.

The note was executed by a resident of California to a resident of California and secured by mortgage on California real estate. The note itself was at all times retained in California in the hands of the payee, who afterward became the agent of the assignee and who collected the money due on the note and retains it in the state of California for the benefit of the appellant.

[1] There is no dispute as to the facts, and the sole question involved is whether or not the interest of the nonresident testator acquired under the contract to assign, constituted "property within this state," under sections 1 and 2 of the California Inheritance Tax Act of 1913 (Stats. 1913, p. 1066).

It is conceded that the succession to the property is subject to the inheritance tax only in the event that the interest passing to appellant is property within the state of California.

There has been in several of the states in the matter of fixing the *situs* of personality for purposes of taxation under the inheritance tax laws a far departure from the common-law rule, and commonly accepted rule that such property follows the domicile of the owner.

It is impracticable to trace the modification of this rule through all its ramifications, but it may be said that as to all tangible personal assets it has become the settled law that they are subject to inheritance tax in the state where they are located at the time of the succession, under statutes imposing such tax upon property of a nonresident owner situated within the state. (Blakemore & Bancroft on Inheritance Taxes, p. 143; *Blackstone* v. *Miller*, 188 U. S. 189, [47 L. Ed. 439, 23 Sup. Ct. Rep. 277, see, also, Rose's U. S. Notes]; *McDougald* v. *Lilienthal*, 174 Cal. 698, [L. R. A. 1917F, 267, 164 Pac. 387]; *State* v. *Dalrymple*, 70 Md. 594, [3 L. R. A. 372, 17 Atl. 82]; *In re Rogers*, 149 Mich. 305, [119 Am. St. Rep. 677, 11 L. R. A. (N. S.) 1134, 112 N. W.

931].) Some of the authorities may be said to have gone further, and for the purposes of such taxation to have fixed the *situs* of intangible property interests such as contract debts and other mere choses in action, within the jurisdiction where the debtor resides and to which the creditor must come to enforce his claim.

The rule supported by these authorities, as applying to choses in action against nonresidents of the state where the inheritance tax is claimed, is that if the owner must invoke the laws of that state to reduce his claim to possession, or secure the beneficial enjoyment thereof, and particularly if the security and evidences of indebtedness are in that state, the property interest is one within the state and subject to the local tax. (*State* v. *Probate Court,* 128 Minn. 371, [L. R. A. 1916A, 901, 150 N. W. 1094]; *Blackstone* v. *Miller, supra; People* v. *Griffith,* 245 Ill. 532, [92 N. E. 313]; *Greves* v. *Shaw,* 173 Mass. 205, [53 N. E. 372]; *State ex rel.* v. *District Court,* 41 Mont. 357, [109 Pac. 438]; *Matter of Houdayer,* 150 N. Y. 37, [55 Am. St. Rep. 642, 34 L. R. A. 235, 44 N. E. 718]; *In re Rogers, supra; State* v. *St. Louis etc. Court,* 128 Minn. 371, [L. R. A. 1916A, 901, 150 N. W. 1098]; *State* v. *Ramsey County Probate Court,* 124 Minn. 508, [Ann. Cas. 1915B, 861, 50 L. R. A. (N. S.) 262, 145 N. W. 390].)

*In re Blackstone's Estate* is a leading case arising in the New York courts and affirmed by the supreme court of the United States (69 App. Div. 127, [74 N. Y. Supp. 508]; affirmed, 171 N. Y. 682, [64 N. E. 1118]; affirmed, 188 U. S. 189, [47 L. Ed. 439, 23 Sup. Ct. Rep. 277, see, also, Rose's U. S. Notes]).

In that case the decedent was a resident of the state of Illinois. At his death he left deposits of money in a trust company in the city of New York, and also in a New York bank. The deposits were subject to payment on demand of the Illinois creditor. They constituted choses in action, as the relation between the bank and its depositors is merely one of debtor and creditor.

These claims were held on contested hearing in the supreme court of New York to be property in that state. This decision was affirmed by the court of appeals in a memorandum opinion, and again by the supreme court of the United States on writ of error to that court.

It may be said, however, for these decisions holding that bank deposits are property in the state where the bank account is created, that they rest to some extent upon the popular fiction that the bank deposit represents actual money in specie. It would require a further and somewhat advanced step to apply this construction to any ordinary contract debt.

It may be admitted that there is much reason and perhaps sound policy for accepting a rule which recognizes as the *situs* of contract debts the place where the debtor resides, and to which the creditor must come to enforce his claim. It may be said with truth that everything which gives value to such a claim exists at the domicile of the debtor.

The adopting of such a rule in California, however, would be a reversal of the common-law doctrine of *mobilia sequuntur personam* which has prevailed in this state and which has been followed by our courts in determining the *situs* of choses in action.

The decisions of the courts of other states, and of the supreme court of the United States construing the statutes of other states, may be suggestive, but are not controlling in determining what constitutes property within the state of California.

No distinction is apparent in the use of the word "property" in our inheritance tax law to differentiate it from the same term in the laws governing the levy and collection of an ordinary property tax. Under section 1, article XIII, of the constitution, and section 3607 of the Political Code, "all property in this state" (subject to certain exemptions) is made subject to taxation for revenue. The term under consideration in the inheritance tax law is "property within this state."

There seems to be no room under our statutes for the distinction as to definitions of property which exists in many jurisdictions between the property tax and the tax upon succession to property.

The California rule as to property taxes is stated in *Estate of Fair*, 128 Cal. 612, [61 Pac. 186], as follows: "As to corporeal chattels such as live animals, manufactured goods and the like, it is doubtless the rule that they are taxable in the state where they have local situation, though the owner may reside elsewhere. . . . The general rule is that

debts attend the person of the creditor and are taxable at his domicile." (*San Francisco* v. *Lux,* 64 Cal. 481–483, [2 Pac. 254]; *San Francisco* v. *Mackay,* 113 Cal. 398, 399, [45 Pac. 696]; *People* v. *Park,* 23 Cal. 139.)

In *Mackay* v. *San Francisco,* 128 Cal. 681, [61 Pac. 382], it is said: "The weight of authority is that a debt so due or to become due should be taxed at the place of residence of the creditor or owner, and that the *situs* of the debt is that of its owner, and that it is not property in the state of the debtor."

A, concession has been made under the decisions of this court in the right to modify the application of the maxim, *mobilia sequuntur personam,* in the matter of certificates of stock in a domestic corporation. It has been held for purposes of the inheritance tax law the *situs* of stock in a corporation is in the state of the incorporation. (*McDougald* v. *Low,* 164 Cal. 107, 110, [127 Pac. 1027]; *Murphy* v. *Crouse,* 135 Cal. 19, [87 Am. St. Rep. 90, 66 Pac. 971]; *McDougald* v. *Lilienthal,* 174 Cal. 701, [L. R. A. 1917F, 267, 164 Pac. 387].) A reason for making a distinction between certificates of stock, and ordinary choses in action, is in the fact that the former represent an interest in and derive their value from the tangible assets of the corporation.

Beyond this the California decisions have shown no disposition to limit or modify the common-law rule that the *situs* of mere choses in action follows the domicile of the owner.

The nearest adjudication of this point as applied to the inheritance tax law we have in California is in the *Estate of Hodges,* 170 Cal. 492, [L. R. A. 1916A, 837, 150 Pac. 344], where it was held that certain bonds and securities, deposits in bank, and other chattels held in the state of Massachusetts but owned by a resident in California, were subject to an inheritance tax in this state. Discussing the application of the maxim, *mobilia sequuntur personam,* Mr. Justice Lorigan, writing the opinion, says: "That maxim, universally applied in the jurisdictions of all civilized nations, is that the personal estate of a decedent, wherever it may in fact be located, is, for the purposes of succession and distribution, deemed to have no other locality than the domicile of the decedent. As a general rule, the domicile of the decedent draws to it in contemplation of law all the personal property of the decedent no matter where its actual

*situs* may be at the time of his death, and the distribution of it is governed and controlled by the laws of succession existing at the place of the domicile of the decedent. The courts of the various states have had frequent occasion to pass upon the power of a state having jurisdiction through its courts over the estate of a domiciled decedent to impose an inheritance tax upon the personal property of such decedent located outside of the state, and the authorities are uniform in holding that though personal property may be actually located in another state than that of the residence of the decedent at the time of his death, its *situs* for the purpose of imposing an inheritance tax upon it is in the state which was the domicile of the decedent and where the primary administration of his estate is being had. (Ross on Inheritance Taxation, pp. 221, 229; Blakemore and Bancroft on Inheritance Taxes, secs. 207, 225; Dos Passos on Inheritance Tax Law, 2d ed., sec. 29; *Estate of Swift,* 137 N. Y. 77, [18 L. R. A. 709, 32 N. E. 1096]; *Frothingham* v. *Shaw,* 175 Mass. 59, [78 Am. St. Rep. 475, 55 N. E. 623]; *People* v. *Union Trust Co.,* 255 Ill. 168, [Ann. Cas. 1913D, 514, 99 N. E. 377]; *In re Bullen's Estate,* 143 Wis. 512, [139 Am. St. Rep. 1114, 128 N. W. 109]; *Mann* v. *State Treasurer,* 74 N. H. 345, [15 L. R. A. (N. S.) 150, 68 Atl. 130]; *In re Dingham's Estate,* 66 App. Div. 228, [72 N. Y. Supp. 694]; *In re Hartman,* 70 N. J. Eq. 664, [62 Atl. 560]; *State* v. *Probate Court,* 121 Minn. 508, [50 L. R. A. (N. S.) 262, 145 N. W. 390]; *Commonwealth* v. *Williams,* 102 Va. 778, [1 Ann. Cas. 434, 47 S. E. 867]; *Estate of Bittinger,* 129 Pa. St. 338, [18 Atl. 132].)

"All of these cases were decided in favor of the right of the state having control of the primary administration of the estate through the application of the maxim *mobilia sequuntur personam;* the well-established general rule that the personal property of a decedent wherever situated is governed by the law of the domicile of the owner both as to distribution and the right to succession."

Such application of this rule has been established by a line of decisions antedating the inheritance tax, and as there is nothing in the enactments creating the inheritance tax to limit or change such application of the rule, it must be held under familiar rules of construction that in the use of the term "property in this state," the legislature intended it

to have the same meaning as had already been given to practically the same expression in the laws governing property taxes.

This rule of construction has been in force so long and has been so consistently followed that if it is to be changed or modified it should be by the legislature and not by the courts.

The judgment is reversed.

Wilbur, J., Lennon, J., Lawlor, J., Shurtleff, J., and Angellotti, C. J., concurred.