[L.A. No. 29905. In Bank. Jan. 14, 1972.]

JEAN L. WAITE, Plaintiff and Respondent, v.
RUSSELL S. WAITE et al., Defendants and Appellants.

462.

## COUNSEL

Thomas C. Lynch and Evelle J. Younger, Attorneys General, Edward M. Belasco, Deputy Attorney General, King & King and Kenneth Sperry for Defendants and Appellants.

Hennigan, Butterwick & Clepper, J. David Hennigan, Edward L. Lascher and Richard E. Rader for Plaintiff and Respondent.

## OPINION

**TOBRINER, J.**—On April 14, 1967, defendant Russell Waite, a retired California Superior Court judge, in an action for an ex parte divorce in Nevada obtained a judgment awarding him all benefits accruing under the Judges' Retirement Law (Gov. Code, §§ 75000-75109). Plaintiff, Jean Waite, defendant's former wife, brought the present action in the Riverside County Superior Court against defendant[1] and Houston Flournoy, State Controller and administrator of the Judges' Retirement System. Following change of venue to Los Angeles County, on August 7, 1968, that court entered judgment awarding plaintiff, her devisee or heirs, one-half of all benefits payable under the Judges' Retirement Law. Defendants appeal.

We affirm the determination of the Los Angeles County Superior Court holding that the portion of the Nevada judgment that awards defendant the whole of the retirement benefits is not entitled to full faith and credit; Nevada had neither personal jurisdiction over plaintiff nor in rem jurisdiction over the asset. We further hold that the retirement benefits attributable to defendant's service as a judge during the marriage constitute community property subject to division and award upon divorce. In so dividing this asset, the superior court awarded a one-half interest not only to plaintiff but also to her heirs and devisee. Since the purpose of the Judges' Retirement Law is to ensure sustenance for the retired judge and

---

[1] The term "defendant," in the singular, will be used to refer to Judge Waite alone; "defendants," in the plural, refers to Judge Waite and State Controller Houston Flournoy.

his spouse, not to benefit their heirs or devisees, we conclude that this mode of division of the pension rights cannot stand and that the judgment in that respect must be reversed.

## 1. *Statement of Facts.*

The following recital rests upon the superior court's findings of fact, which are not challenged on appeal. The parties married in 1934, and separated on January 20, 1967. During the marriage defendant served as a judge of the Superior Court of Riverside County. Over these years of service he contributed $13,090.18 to the Judges' Retirement Fund, all of which was community property. He retired on October 31, 1966, without withdrawing his contributions (Gov. Code, § 75033) or electing any optional settlement (Gov. Code, §§ 75070-75071), and became entitled to a monthly pension in an amount equal to 75 percent of the salary of the judge holding defendant's former office (Gov. Code, § 75076). At all relevant times this yielded a monthly payment of $1,562.50, but since defendant will obtain the benefits of any future increase in salary of that office, the trial court did not find the actuarial value of defendant's pension.

Plaintiff was eligible to retire from her teaching position on January 20, 1967, and did retire on June 16, 1967; she receives monthly benefits from the Teachers' Retirement Fund of $111.67. Her pension rights equal an actuarial value of $14,457, of which $13,879 is attributable to her services and contributions during the marriage.

Upon separating on January 20, 1967, the parties equitably divided the community property at hand, which included cash, notes, automobiles, clothing, and furniture. Apparently the only assets not included in the agreement were the parties' respective pension rights.

On February 2, 1967, defendant became a permanent resident of Nevada. He then sued for divorce in the Eighth Judicial District Court of Nevada. On March 22, 1967, plaintiff was personally served in California with the Nevada summons. Since plaintiff was not served in Nevada, and did not appear there, defendant concedes that Nevada did not acquire personal jurisdiction over her. Granting defendant an ex parte divorce on April 14, 1967, the Nevada court awarded defendant the "contributions to Judges' Retirement Fund, together with all rights and benefits accruing thereunder," likewise gave plaintiff equivalent title to her teachers' pension, and finally distributed the rest of the community property in accord with the separation agreement.

Plaintiff, on March 8, 1967, filed the present action for divorce in the Riverside County Superior Court, naming Houston Flournoy, State Controller and administrator of the Judges' Retirement Fund, as an additional party. Defendant and Flournoy appeared and answered the complaint. After trial the superior court, on August 7, 1968, concluded that the Nevada decree terminated the marriage, but that Nevada lacked jurisdiction to allocate the community property or fix alimony. The court divided the property, other than the pension rights, on the basis of the separation agreement; it awarded plaintiff all benefits under the Teachers' Retirement Fund, valued at $13,879. In return defendant received the $26,562.50 which had been paid him by the Judges' Retirement Fund between the separation and the date of trial.

As to amounts payable under the Judges' Retirement Law, the court ordered that "Flournoy or his successor in office pay directly to plaintiff herein *or her devisee or heirs* one half of all benefits which may be payable under the Judge's Retirement Act by reason of the services of defendant Waite." (Italics added.) Finally, the court awarded plaintiff alimony of $1 a month, but provided that "During any period of time that said payment be suspended pursuant to the provisions of Government Code [suspending payments whenever a retired judge accepts temporary judicial assignment and receives a salary] or for other cause within the control of defendant Waite, defendant Waite is ordered to pay as alimony to plaintiff a sum equal to 37½ % of the then salary of a judge of the Superior Court. . . ."

Defendant's appeal attacks only the award to plaintiff, her devisee or heirs, of one-half of all benefits payable under the Judges' Retirement Law. He raises three contentions: (1) that the Nevada judgment awarding him all the benefits should receive full faith and credit in California; (2) that the benefits do not constitute community property, but his separate property; and (3) if plaintiff should predecease him, payments thereafter should go to defendant instead of to plaintiff's heirs or devisee.

*2. The Nevada court lacked jurisdiction to divide and award the benefits accruing under the Judges' Retirement Law.*

The concept of divisible divorce in California found expression in the classic decision of *Hudson* v. *Hudson* (1959) 52 Cal.2d 735 [344 P.2d 295], in which we stated that " 'In a divorce action in a foreign state upon constructive service the court there has authority to adjudicate status (in rem) of a person residing in that state but has not jurisdiction to adjudicate away (in personam) any of the then vested property rights of the absent spouse who does not reside in such state, who is not personally

served with process in that state and who does not appear in the action. The personal rights of the spouses in property not within the jurisdiction of the acting court remain subject to litigation in the proper forum.'" (52 Cal.2d at p. 742, quoting concurring opinion of Schauer, J., in *DeYoung* v. *DeYoung* (1946) 27 Cal.2d 521, 527 [165 P.2d 457]; see *Vanderbilt* v. *Vanderbilt* (1957) 354 U.S. 416, 418 [1 L.Ed.2d 1456, 1459, 77 S.Ct. 1360]; *Weber* v. *Superior Court* (1960) 53 Cal.2d 403, 405 [2 Cal.Rptr. 9, 348 P.2d 572].)

Acknowledging that Nevada lacked in personam jurisdiction over plaintiff, defendant nevertheless contends that his right to pension benefits is a species of intangible personal property, and that Nevada, as the state of his domicile, could exercise jurisdiction in rem to adjudicate and award title to that property. In support of this contention he cites numerous cases which fix the "situs" of a debt or chose in action in the state of the creditor's domicile. (See, e.g., *Texas* v. *New Jersey* (1965) 379 U.S. 674 [13 L.Ed.2d 596, 85 S.Ct. 626]; *McCulloch* v. *Franchise Tax Bd.* (1964) 61 Cal.2d 186 [37 Cal.Rptr. 636, 390 P.2d 412]; *Chambers* v. *Mumford* (1921) 187 Cal. 228, 233 [201 P. 588, 42 A.L.R. 342]; *Fenton* v. *Edwards & Johnson* (1899) 126 Cal. 43, 46 [58 P. 320].) Plaintiff responds with an equal array of cases holding that the situs of a debt can only repose where the debtor is subject to an in personam action. (E.g., *McElroy* v. *McElroy* (1948) 32 Cal.2d 828, 831 [198 P.2d 683]; see *Harris* v. *Balk* (1905) 198 U.S. 215 [49 L.Ed. 1023, 25 S.Ct. 625]; *Estate of Waits* (1944) 23 Cal.2d 676, 680 [146 P.2d 5].)

▆ This apparent clash of authorities, however, does not signify any fundamental difference of principle, but serves instead to illustrate the proposition that "An intangible, unlike real or tangible personal property, has no physical characteristics that would serve as a basis for assigning it to a particular locality. *The location assigned to it depends on what action is to be taken with reference to it.*" (*Estate of Waits* (1944) 23 Cal. 2d 676, 680 [146 P.2d 5]; accord, *Atkinson* v. *Superior Court* (1957) 49 Cal.2d 338, 342-343 [316 P.2d 960].) (Italics added.) Thus most cases that place the situs of an intangible asset at the domicile of the owner do so to enable the jurisdiction of the owner's domicile to tax that property or the income derived from it. (See *McCulloch* v. *Franchise Tax Bd.* (1964) 61 Cal.2d 186 [37 Cal.Rptr. 636, 390 P.2d 412]; *Chambers* v. *Mumford* (1921) 187 Cal. 228 [201 P. 588, 42 A.L.R. 342]; *Mackay* v. *San Francisco* (1900) 128 Cal. 678 [61 P. 382].) *Texas* v. *New Jersey* (1965) 379 U.S. 674 [13 L.Ed.2d 596, 85 S.Ct. 626], adopted a similar rule for escheat. ▆ When, however, the issue, as in this case, involves jurisdiction to compel the obligor to pay one claimant and not a com-

peting claimant, "the debt or claim is usually regarded as having a situs in any state in which personal jurisdiction of the debtor can be obtained." (1 Witkin, Cal. Procedure (2d ed. 1970) p. 685; see *Harris* v. *Balk* (1905) 198 U.S. 215 [49 L.Ed. 1023, 25 S.Ct. 625] [garnishment]; *McElroy* v. *McElroy* (1948) 32 Cal.2d 828 [198 P.2d 683] [suit to enforce constructive trust]; but see *Fenton* v. *Edwards & Johnson* (1899) 126 Cal. 43 [58 P. 320] [garnishment].)

*Hanson* v. *Denckla* (1958) 357 U.S. 235 [2 L.Ed.2d 1283, 78 S.Ct. 1228], is particularly in point. Florida residents filed suit in Florida to establish their right to certain intangible property held by a trust established and administered in Delaware. Other claimants to that property, who were not residents of Florida, denied Florida's jurisdiction to adjudicate the matter. When the Delaware courts refused full faith and credit to Florida's decree favoring the claim of its residents, the issue reached the United States Supreme Court. Before that court, the Florida claimants argued that Florida could exercise in rem jurisdiction over the trust on the theory that the situs of intangible property follows the domicile of the owner—exactly the contention advanced by defendant in this case. The Supreme Court rejected the argument, stating that "[f]or the purpose of jurisdiction *in rem* the maxim that personalty has its situs at the domicile of its owner is a fiction of limited utility. . . . The fact that the owner is or was domiciled within the forum State is not a sufficient affiliation with the property upon which to base jurisdiction *in rem*." (357 U.S. at p. 249 [2 L.Ed.2d at p. 1295].)

■ In the instant case, the purpose of assigning a "situs" to the pension rights is to establish jurisdiction to award those rights on dissolution of the marriage. Within this context, jurisdiction should be determined "in the light of the totality of contacts with the state involved" and the "bearing that local contacts have to the question of over-all fair play and substantial justice." (*Atkinson* v. *Superior Court* (1957) 49 Cal.2d 338, 345-347 [316 P.2d 960].)

■ Accordingly, we enumerate the relevant "contacts" of each state in the present case. The benefits here at issue arise from defendant's contributions while a judge in California, augmented by California tax revenues. The laws of California, not those of Nevada, define defendant's pension rights, and the laws of this state likewise fix the character of those rights as separate or community property. It was his service as a judge in California that entitles defendant to a pension, and during those years he was, of course, a resident of California. The pensioner's former wife, the plaintiff, remains a resident of California. The obligor of the claims as-

serted here, the Judges' Retirement Fund, is a fund established in the State Treasury of California and administered by California's State Controller.[2] Under these circumstances the fact that defendant, after retirement, established domicile in Nevada is far outweighed by the multiple relevant contacts of California.

We believe, moreover, that assignment of the "situs" of the pension benefits to California will promote the more efficient judicial administration (see *Texas* v. *New Jersey* (1965) 379 U.S. 674, 683 [13 L.Ed.2d 596, 602, 85 S.Ct. 626]) and will be the more likely to aid in achieving a satisfactory division of the community property. When the foreign court lacks personal jurisdiction over the California spouse and in rem jurisdiction over the real and personal property which remains in California, the grant of jurisdiction over intangible assets to the foreign court may result in a piecemeal, inefficient, and sometimes inequitable disposition of the community property. In such a case the California court, as the only court that can exercise jurisdiction over all the parties and all community assets, constitutes the better equipped tribunal to adjudicate an equitable division of the community property.

3. *The benefits payable under the Judges' Retirement Law are community property.*

In *Phillipson* v. *Board of Administration* (1970) 3 Cal.3d 32 [89 Cal. Rptr. 61, 473 P.2d 765], we held that the accumulated contributions of a retired employee to the Public Employees' Retirement System were community property, subject to the jurisdiction of the divorce court; we upheld that court's award of those funds to the wife of the former employee. Although defendant seeks to distinguish *Phillipson,* most of his arguments run squarely into conflict with the express and considered language of that opinion.

Recognizing that *Phillipson* held that contributions to a pension fund that are accumulated during the marriage compose community property, defendant first contends that pension *benefits* should be classed as separate property. *Phillipson,* however, stated clearly that "Monies contributed to the Public Employees' Retirement System, *and benefits payable,* are community property." (3 Cal.3d at p. 39.) (Italics added.) Surely pension benefits do not represent the beneficent gratuities of the employer; they are, rather, part of the consideration earned by the employee. (*Sweesy* v.

---

[2]The Controller is not a mere stakeholder. "Pension administrators . . . have a substantial and abiding interest in maintaining the integrity of their funds and assuring eventual security against profligacy and misfortune." (*Ogle* v. *Heim* (1968) 69 Cal.2d 7, 13 [69 Cal.Rptr. 579, 442 P.2d 659].)

*L.A. etc. Retirement Board* (1941) 17 Cal.2d 356, 359-360 [110 P.2d 37].)[3] Consequently "the community property of the marriage includes not only the contributions but also the matured pension rights payable as a benefit of employment." (*Phillipson* v. *Board of Administration, supra,* 3 Cal.3d at p. 49.)[4]

Secondly, defendant quotes our statement in *Benson* v. *City of Los Angeles* (1963) 60 Cal.2d 355, 362 [33 Cal.Rptr. 257, 384 P.2d 649], that "a wife of a public employee acquires no vested interest in a pension until it becomes payable to her." He then argues that no benefits would become payable to plaintiff directly under the Judges' Retirement Law until defendant died, and then only if plaintiff qualified as surviving spouse. (Gov. Code, § 75077.) Consequently, defendant argues, the wife acquired "no vested interest." Yet *Phillipson* rejected the identical argument; we there pointed out that the sentence that defendant quotes from *Benson* refers only to the wife's contingent right to a widow's benefit; both *Benson* and *Phillipson* clearly distinguish the spouse's *vested* community interest in the employee's lifetime pension.[5] (*Phillipson* v. *Board of Administration, supra,* 3 Cal.3d at pp. 42-43; see also *Packer* v. *Board of Retirement* (1950) 35 Cal.2d 212, 216 [217 P.2d 660].)

Finally, defendant contends that *Phillipson* is limited to pensions under the Public Employees' Retirement System, and that pensions paid pur-

---

[3]See *O'Dea* v. *Cook* (1917) 176 Cal. 659, 661 [169 P. 366]; *Brummund* v. *City of Oakland* (1952) 111 Cal.App.2d 114, 121 [244 P.2d 441].

[4]Defendant also seeks to distinguish *Phillipson* on the ground that, unlike Mr. Phillipson, defendant did not abscond with any community assets. We based our holding in *Phillipson,* however, on principles of community property, not upon any desire to punish Mr. Phillipson. The fact that he absconded with community funds became relevant only because the trial court did not divide the pension rights between the spouses, as in the present case, but awarded the entire accumulated contributions to Mrs. Phillipson—an award that might have been questioned as inequitable if Mr. Phillipson had not left the jurisdiction and taken community assets of greater value.

[5]*Phillipson* explained the *Benson* decision: "[Defendant's] arguments ignore the language of *Benson* that '[t]his is not to say that upon a division of the community estate she [Teresa] could not have participated therein. Undoubtedly she *had an interest* which she could have asserted in the payments to August during his lifetime. . . .' (Italics added.) (60 Cal.2d at p. 360.) In *Benson* the court clearly differentiates August's vested pension rights upon retirement from his 'widow's' contingent rights. Thus, after his retirement August had a present and unconditional right to pension payments; this right, therefore, composed a community asset which could be divided upon divorce. But this right to a lifetime pension or to accumulated contributions did not survive August's death. The only right that remained after death was that of his widow to a widow's pension; that right, however, was a conditional one, payable only if August left a widow and only to the person so described." (3 Cal.3d at pp. 42-43.)

suant to the Judges' Retirement Law are not community property. He notes that pensions under the Public Employees' Retirement System are payable in predetermined dollar amounts. Judges' pensions, however, are fixed as a percentage of the salary of the judicial office; an increase in pay to the judge's successor in office increases the retired judge's pension. (Gov. Code, § 75072.) Furthermore, the acceptance by a retired judge of a temporary judicial assignment reduces his pension to the extent of the salary he receives. (Gov. Code, § 68543.5.) Thus defendant argues that retired judges, unlike all other retired public employees, do not enjoy an unconditional and vested right to pension payments.

Yet, as we shall explain, defendant's points of alleged difference between judicial and non-judicial pensions cannot realistically affect our determination as to whether the judicial pension constitutes community or separate property.

The plan of payment of the pension—whether fixed, or reflective of subsequent salary increases in the relevant position—does not change the nature of the right to the pension. The right flows from the services rendered by the employee during marriage; the manner of the expression of the right does not distort it or alter its community characteristic.

Legislative enactment may change the amount of pensions payable in the future (*Sweesy* v. *L. A. etc. Retirement Board* (1941) 17 Cal.2d 356, 361 [110 P.2d 37] [Los Angeles City firemen]; *Jorgensen* v. *Cranston* (1962) 211 Cal.App.2d 292, 297 [27 Cal.Rptr. 297] [superior court judge]); often such increases become necessary to avoid an inflationary-caused dimunition in the real dollar value of the pension. The only difference in this respect between pensions of judges and those of other public employees is that under the present statute retired judges' pensions automatically increase whenever the Legislature raises the salaries of active judges, while other retired employees obtain increases only if the Legislature initiates such an increase. But all public employees, including judges, may obtain increased pensions through Legislative enactment, and none, including judges, receive such increases without some kind of prior or co-incident legislative action. ■ Whether a pension plan provides for fixed or variable payments, and whether adjustments occur automatically or require legislation, the basic point remains that the pension payment serves as a remuneration for services rendered by the employee; if these services were discharged during the marriage, that remuneration must compose a community asset. Once the employee's right to a pension vests upon his retirement, variations in the amount of such payments do not affect the community character of that asset.

Defendant correctly points out that in *Phillipson* we spoke of the retired employee's "unconditional" right to a pension (3 Cal.3d at p. 41), while in this case defendant's right carries the condition that the judge not accept judicial assignment at a salary in excess of his pension. ■ Yet the choice of whether or not the judge accepts future judicial assignments, if any are offered by the Chairman of the Judicial Council, lies with the judge; the exercise of any right accorded by the Judges' Retirement Law is completely within his control; hence this option does not reduce the pension to a "conditional" one. Defendant's rights under the Judges' Retirement Law, coupled with his power to refuse further judicial assignment, render his pension fully as secured, as "vested," as that of any other public employee.

Defendant would, in essence, invite us to declare that the matured pension rights of all public employees except judges are community property; that those of judges somehow are separate property. As we have seen, however, the differences between the Public Employees' Retirement Act and the Judges' Retirement Law, either do not exist at all or are relatively minor, and from a realistic view do not render judicial pensions less certain and secure than pensions of other employees. We conclude that judicial pensions must also be classed as community property.

4. *The superior court exceeded its discretion in awarding benefits to plaintiff's heirs and devisees.*

The superior court ordered the Controller to "pay directly to plaintiff herein *or her devisee or heirs* one half of all benefits which may be payable under the Judge's Retirement Act by reason of the services of defendant Waite." (Italics added.) ■ Defendant objects to the italicized language favoring plaintiff's heirs or devisees;[6] he correctly contends that if plaintiff dies before him, her share of the monthly pension payments should then go directly to him, and not to plaintiff's estate.

■ As we stated in *Phillipson*, "Pension programs for public employees

---

[6]Defendant also complains that the language of the judgment awarding plaintiff and her successors "one half of *all* benefits which may be payable . . . by reason of the services of defendant" (italics added) could be interpreted as awarding plaintiff one-half of any benefits paid to a surviving spouse, contrary to the holding of this court in *Benson* v. *City of Los Angeles* (1963) 60 Cal.2d 355, 360-362 [33 Cal.Rptr. 257, 384 P.2d 649]. We doubt that the trial court intended an interpretation of its judgment directly contrary to controlling authority. Since plaintiff herself does not contend for any interpretation of the judgment which would give her the benefits of a surviving spouse, we interpret the superior court judgment as awarding plaintiff only one-half of the monthly pension benefits payable in the lifetime of defendant, and not awarding her any share in the benefits, if any, which may be payable to a surviving spouse of defendant.

serve two objectives: to induce persons to enter and continue in public service, and to provide subsistence for disabled or retired employees and their dependents." (3 Cal.3d at p. 49.) ██ As we likewise set forth in *Bellus* v. *City of Eureka* (1968) 69 Cal.2d 336, 351 [71 Cal.Rptr. 135, 444 P.2d 711], "One purpose of providing pensions for municipal officers is to induce them to enter and continue in the service of the city. Another is to provide sufficient subsistence for retired or disabled officers (or their dependents) who have performed their obligations under the employment contract." (See also *Malone* v. *City of Los Angeles* (1954) 126 Cal.App.2d 447, 451 [272 P.2d 796]; *Platt* v. *City of Los Angeles* (1946) 72 Cal.App. 2d 753, 770 [165 P.2d 714]; *Klench* v. *Board of Pension Fd. Commrs.* (1926) 79 Cal.App. 171, 189 [249 P. 46].) Accordingly, the state has established here a pension plan in which pension benefits terminate with the death of the employee or, under optional programs, with the death of his surviving spouse. (Gov. Code, §§ 75070, 75071.) The state contributes no benefits to the employee's estate, his heirs, or his legatees.[7]

██ The state's concern, then, lies in provision for the subsistence of the employee and his spouse, not in the extension of benefits to such persons or organizations the spouse may select as the objects of her bounty. Once the spouse dies, of course, her need for subsistence ends, and the state's interest in her sustenance reaches a coincident completion. When this termination occurs, the state's concern narrows to the sustenance of the retired employee; its pension payments must necessarily be directed to that sole objective.

The wife complains that this reasoning deprives her of an "equal" portion of the pension; if the judge enjoys a right to payments for his lifetime but her right is limited to the period of the judge's life or her life (whichever is shorter), her interest would be unequal in length to his, and actuarially of lesser value.[8] The wife, however, can claim no right to precise equality in the division of community assets; in fact, in *Phillipson* we sug-

---

[7] Under one optional program, if the employee dies before he has received pension payments equal to his accumulated contributions, the balance of those contributions go to his estate. (Gov. Code, § 75071, subd. (a).) The estate, however, receives no funds contributed by the state.

[8] Our refusal to sanction an award to the heirs or devisees of plaintiff creates in itself no inequality, since the pension system provides no benefit for the heirs or devisees of defendant. There is, arguably, an inequality in the failure of the Judges' Retirement Law to provide subsistence to the non-employee's ex-spouse *after* the employee's death. (The judge's own pension, of course, continues after his wife's death.) It is this inequality which gives defendant's share of the pension benefits a higher actuarial value than plaintiff's share. But this unequal treatment of the spouse who survives her employee husband would not be redressed by providing windfall benefits to the heirs or devisees of the spouse who dies before the employee.

gested that if feasible the court should award the *entire* pension to the employee, and compensate his spouse with property of equivalent value. (3 Cal.3d at p. 46.) ■■■ Thus a spouse suffers no injury when the court, in effectuating the purposes of the pension program, awards the employee more than half the actuarial value of the pension rights; the court, if it sees fit, may compensate the spouse by an award of more than half the value of some other community asset.

We conclude that the statutory design for judges' pensions negates the spouse's contention that her legatees should inherit pension payments payable for the balance of the judge's life. Whatever community interest the wife may claim, it cannot transcend the legislation upon which the pension itself rests. ■■■ The legislation grants to the wife, not an inheritable legacy, but a continuing economic protection for her lifetime, a state-secured provision for subsistence.

## 5. *Conclusion.*

Since the Nevada judgment was not binding as to the division of community property, the superior court in the instant case had jurisdiction to divide the community assets. That court correctly determined that pension payments under the Judges' Retirement Law are community property, but in dividing that community asset, it erred in awarding benefits to the devisee or heirs of the plaintiff.

The judgment is therefore reversed.[9] Each party shall bear his own costs on appeal.

Wright, C. J., McComb, J., Peters, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

---

[9]The judgment could be corrected by simply striking the award to plaintiff's devisee or heirs in paragraph 2 of the judgment. This modification, however, would transform the superior court's equal division of this community asset into an actuarially unequal division. The trial court, if it sees fit to do so, may compute that difference in actuarial value and alter other portions of its judgment to compensate plaintiff for this loss in value. In making the computation of actuarial value, the trial court may disregard the possibility that defendant's pension benefits may be affected by legislative amendment to the Judges' Retirement Law, by an increase in the salary paid to the judge holding defendant's former office, or by defendant's accepting temporary judicial assignment.