[L.A. No. 30165. In Bank. Jan. 3, 1974.]

In re the Marriage of JAMES E. and CAMILLE J. FITHIAN, JR. JAMES E. FITHIAN, JR., Appellant, v. CAMILLE J. FITHIAN, Respondent.

594

**COUNSEL**

Lawton, Christensen, Fazio, McDonnell, Briggs & Ward and Steven E. Briggs for Appellant.

Schlegel, Friedemann & Menke, David L. Price and John K. York for Respondent.

Marilyn Hall Patel as Amicus Curiae on behalf of Respondent.

## OPINION

**MOSK, J.**—James E. Fithian, Jr., appeals from an interlocutory judgment ordering the dissolution of his marriage to Camille J. Fithian and establishing the community property rights of the respective parties. ■ Husband specifically challenges the trial court's characterization of a portion of his federal military retirement pay as community property, contending such a determination is forbidden to the states by the supremacy clause (art. VI, cl. 2) of the United States Constitution. We conclude federal military retirement pay is properly the subject of California community property law and therefore affirm the judgment.

After serving 22 years in the United States Marine Corps, husband retired with the rank of lieutenant colonel under the authority of title 10, United States Code, section 6323.[1] Pursuant to the provisions of that section, husband began to draw retirement pay, referred to in the statute as "retired pay," on a monthly basis and remains eligible to do so for the duration of his life. Two years subsequent to his retirement, husband commenced the instant dissolution proceeding. The trial court found the parties had been married for 16 of husband's 22 years in the Marine Corps and had become residents of California prior to husband's retirement. Therefore, the trial court concluded 71 percent of husband's retirement pay is part community property and part quasi-community property subject to the jurisdiction of California courts, and directed husband to pay 35½ percent of his post-dissolution retirement benefits to wife as he receives them.

---

[1]Section 6323 provides in pertinent part: "(a) An officer of the Navy or the Marine Corps who applies for retirement after completing more than 20 years of active service, of which at least 10 years was service as a commissioned officer, may, in the discretion of the President, be retired on the first day of any month designated by the President.

"(b) For the purposes of this section (1) an officer's years of active service are computed by adding all his active service in the armed forces; and (2) his years of service as a commissioned officer are computed by adding all his active service in the armed forces under permanent or temporary appointments in grades above warrant officer, W-1.

"(c) Unless otherwise entitled to a higher grade, each officer retired under this section shall be retired (1) in the highest grade, permanent or temporary, in which he served satisfactorily on active duty as determined by the Secretary of the Navy; or (2) if the Secretary determines that he did not serve satisfactorily in his highest temporary grade, in the next lower grade in which he has served, but not lower than his permanent grade. . . .

"(e) Unless otherwise entitled to higher pay, an officer retired under this section is entitled to retired pay at the rate of 2½ percent of the basic pay to which he would be entitled if serving on active duty in the grade in which retired multiplied by the number of years of service that may be credited to him under section 1405 of this title, but the retired pay may not be more than 75 percent of the basic pay upon which the computation of retired pay is based. . . ."

■■ The law is settled in California that retirement benefits which flow from the employment relationship, to the extent they have vested,[2] are community property subject to equal division between the spouses in the event the marriage is dissolved. (*Waite* v. *Waite* (1972) 6 Cal.3d 461 [99 Cal.Rptr. 325, 492 P.2d 13]; *Phillipson* v. *Board of Administration* (1970) 3 Cal.3d 32 [89 Cal.Rptr. 61, 473 P.2d 765]; *Benson* v. *City of Los Angeles* (1963) 60 Cal.2d 355 [33 Cal.Rptr. 257, 384 P.2d 649]; *French* v. *French* (1941) 17 Cal.2d 775 [112 P.2d 235, 134 A.L.R. 366]; *Crossan* v. *Crossan* (1939) 35 Cal.App.2d 39 [94 P.2d 609].) ■ Underlying the community treatment of retirement benefits is the concept that they do not derive from the beneficence of the employer, but are properly part of the consideration earned by the employee. Thus whether an employee is required to make contributions to the retirement fund is irrelevant to the ultimate characterization of the benefits as community property. (*Phillipson* v. *Board of Administration* (1970) *supra; Sweesy* v. *L. A. etc. Retirement Bd.* (1941) 17 Cal.2d 356 [110 P.2d 37].) Furthermore, the principle that retirement benefits are community property has been held to apply whether the source of the retirement fund lies in a state, federal, military, or private employment relationship. (*Waite* v. *Waite* (1972) *supra; Phillipson* v. *Board of Administration* (1970) *supra; Estate of Perryman* (1955) 133 Cal.App.2d 1 [283 P.2d 298]; *French* v. *French* (1941) *supra.*)

The conclusion follows that husband's federal military retirement pay must be considered community property in accordance with established principles of California law. Although the retirement fund was noncontributory, husband's rights to the benefits vested during marriage and constituted an integral part of his compensation for service in the military.

Husband contends, however, the treatment of federal military retirement pay as community property frustrates the specific purpose of Congress in enacting the federal military retirement pay system, and therefore is beyond the jurisdiction of the California courts by virtue of the supremacy clause of the United States Constitution.[3] It is asserted that the several

---

[2]The right to retirement benefits "vests" when an employee acquires an irrevocable interest in a fund created by his own contributions and/or the contributions of his employer. The "vesting" of retirement benefits must be distinguished from the "maturing" of those benefits, which occurs only after the conditions precedent to the payment of the benefits have taken place or are within the control of the employee. (*Williamson* v. *Williamson* (1962) 203 Cal.App.2d 8, 11 [21 Cal.Rptr. 164]; see also Kent, *Pension Funds and Problems Under California Community Property Laws* (1950) 2 Stan.L.Rev. 447, 463, 465.)

Husband does not contend his rights to the retirement fund had not vested during the marriage.

[3]Article VI, clause 2, of the United States Constitution provides: "This Constitution, and the laws of the United States which shall be made in pursuance thereof; and

cases in California and other community property states holding federal military retirement pay to be community property have failed to explore the crucial issue whether federal law permits the states to make such a determination. (*In re Marriage of Karlin* (1972) 24 Cal.App.3d 25 [101 Cal.Rptr. 240]; *Bensing* v. *Bensing* (1972) 25 Cal.App.3d 889 [102 Cal. Rptr. 255]; *In re Marriage of Brown* (1972) 27 Cal.App.3d 188 [103 Cal. Rptr. 510] *Dominey* v. *Dominey* (Tex.Civ.App. 1972) 481 S.W.2d 473; *Busby* v. *Busby* (Tex. 1970) 457 S.W.2d 551; *Mora* v. *Mora* (Tex.Civ. App. 1968) 429 S.W.2d 660; *Kirkham* v. *Kirkham* (Tex.Civ.App. 1960) 335 S.W.2d 393; *LeClert* v. *LeClert* (1969) 80 N.M. 235 [453 P.2d 755]; *Morris* v. *Morris* (1966) 69 Wn.2d 506 [419 P.2d 129] (dictum).)

When there have been questions of property law involving a conflict between a state decision and a valid federal statute, the United States Supreme Court has determined that the supremacy clause requires the state law to yield no matter how clearly the subject matter otherwise falls within the state's acknowledged sphere of power. (*Free* v. *Bland* (1962) 369 U.S. 663 [8 L.Ed.2d 180, 82 S.Ct. 1089]; *Wissner* v. *Wissner* (1950) 338 U.S. 655 [94 L.Ed. 424, 70 S.Ct. 398].) Our task, therefore, is to ascertain whether the application of California community property law to husband's federal military retirement pay interferes in any way with the accomplishment of the goals of Congress in creating the current military retirement scheme.[4]

The contention that Congress intended federal military pay to be the separate property of the recipient is based in large measure on *Wissner* v. *Wissner* (1950) *supra*, 338 U.S. 655. In *Wissner*, the trial court ordered the beneficiary of life insurance proceeds under the National Service Life Insurance Act (38 U.S.C. § 701 et seq.) to pay half the proceeds, as community property, to the deceased soldier's widow. The United States Supreme Court held the order invalid under the supremacy clause on the

---

all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the Judges in every state shall be bound thereby, anything in the Constitution or laws of any state to the contrary notwithstanding."

[4] In a recent article, *Is Armed Services Retired Pay Really Community Property?* (1973) 48 State Bar J. 12, Judge B. Abbott Goldberg maintains that the characterization of a federally created property right is exclusively a matter of federal law, and state law may not operate unless Congress specifically intended it to do so. *Free* and *Wissner* make clear, however, that state law may determine the treatment accorded locally to a federally created property right so long as the result does not frustrate the express or implied purposes of the federal legislation. (See also *Bank of America* v. *Parnell* (1956) 352 U.S. 29 [1 L.Ed.2d 93, 77 S.Ct. 119].)

Judge Goldberg's article also supports several of husband's contentions regarding congressional intent which we consider *infra*.

ground that the specific language of the act,[5] construed in the light of congressional intent, gave the serviceman the absolute right to choose the beneficiary of the policy and hence was invulnerable to the application of state community property law.

*Wissner* does not require community property states to classify the proceeds of National Service Life Insurance policies as separate property, but only to refrain from administering those incidents of community property law which would frustrate the congressional plan. In *Estate of Allie* (1958) 50 Cal.2d 794 [329 P.2d 903], we held that insurance proceeds payable to the serviceman's estate may be considered community property since such a classification does not hinder the insured's free choice of beneficiaries. It is clear, therefore, *Wissner* did not establish a general rule that federal employment benefits cannot be treated as community property, but merely construed a specific statute in view of the congressional intent it embodied.[6] *Wissner* has no controlling impact on the case at bar except to mandate us to examine the legislative goals behind the federal military retirement pay system.

Nevertheless we are asked to measure the property involved herein against a five-part *Wissner* "test" which purportedly determines whether Congress intended a federally created property right to be immune from community property characterization by the states. According to this asserted yardstick, federal benefits must be the separate property of the recipient if (1) they were intended to directly enhance morale; (2) they were intended to be paid from congressional appropriations; (3) their administration costs were intended to be borne by the United States; (4) premiums or contributions to the system were intended to be low; and (5) they were intended to afford as much material protection as possible to the recipient. Although the federal military retirement pay system doubtless satisfies each of the asserted criteria, the source of these purported standards is a tortured reading of the *Wissner* opinion. No precise language in *Wissner* is quoted in the formulation of this "test" of congressional intent; rather the standard is devised by paraphrasing a series of statements by the court taken out of context and artificially

---

[5]Title 38, United States Code, section 717(a), provides: "The insured shall have the right to designate the beneficiary or beneficiaries of insurance maturing on or after August 1, 1946, and shall, subject to regulations, at all times have the right to change the beneficiary or beneficiaries of such insurance without the consent of such beneficiary or beneficiaries."

[6]*Wissner,* for example, expressly refrained from deciding whether army pay could be classed as community property and whether the soldier's widow could recover half the insurance premiums derived from that pay.

grouped together.[7] Aside from the vacuous content of the asserted "tests," which are so broad as to embrace virtually all federally created benefit plans, *Wissner* makes plain that it is embarking on the task of specific statutory construction, and not setting forth general propositions by which to evaluate the goals of Congress in other legislative enactments.

We have studied Senate reports and congressional hearings concerned with the adoption of the federal military retirement pay system in an effort to ascertain any legislative intent to preserve the benefits of the system as the separate property of the recipient. We fail to find in the legislative background any indication that Congress intended military retirement pay to be separate property, or, conversely, that treating the pay as community property circumvents the congressional scheme. There is considerable evidence that Congress enacted the federal military retirement pay system in order to bolster the morale of the serviceman and to provide him with an incentive to remain in the armed services, as well as to afford him material protection in his later years. It does not follow therefrom that applying community property law to retirement pay creates a disincentive to establishing a career in the military, or detracts from a serviceman's spirit or future security.

Husband argues that Congress explicitly determined federal military retirement pay is the "personal entitlement" of the serviceman, "payable to the member himself as long as he lives," and therefore foreclosed the states from applying a community property characterization which impinges on the concept of "personal entitlement." (1968 U.S. Code Cong. & Admin. News, p. 3300; see also Sen. Rep. No. 1480, 90th Cong., 2d Sess. (1968).) The legislative materials cited, however, make clear that Congress used the phrase "personal entitlement" to signify that retirement benefits cease with the death of the serviceman, and provide no continuing means of support for the serviceman's widow or family.[8]

It is next suggested that if military retirement pay ceases with the death of the serviceman, then Congress must have intended that wife have no vested rights in the benefits. No part of a serviceman's retirement

---

[7]The first and fifth "tests," that the benefits be intended to directly enhance morale and afford material protection, are adopted from a discussion in *Wissner* exploring the constitutionality of the National Service Life Insurance Act. The remaining three "tests," that costs be borne by the United States and supported by congressional appropriations and that premiums be low, derive from a discussion of characteristics peculiar to the National Service Life Insurance system.

[8]Congress' reference to military retirement benefits as the "personal entitlement" of the serviceman occurs in the context of underscoring the need for an annuity plan to provide for a deceased serviceman's family.

pay passes to the estate of his wife should she predecease him, and therefore, it is argued, this aspect of the plan is significantly incompatible with our community property scheme. ■ This contention, however, overlooks the fact that retirement benefits in California, though community property, do not necessarily constitute an inheritable legacy. Consistent with community property law, a wife may maintain a nontestamentary community property right in benefits which extends only during the lifetime of her husband. (*Waite* v. *Waite* (1972) *supra*, 6 Cal.3d 461.)[9] Thus we conclude that the application of California community property law does not prevent federal military retirement pay from retaining its character as the "personal entitlement" of the serviceman in the sense Congress employed the phrase.

Because federal military retirement pay carries with it no right of survivorship, the characterization of benefits as community property places the serviceman's ex-wife in a somewhat better position than that of his widow. Such result is anomalous, husband contends, in light of the fact that Congress created annuity plans specifically to support a serviceman's widow,[10] but made no provisions in favor of a serviceman's divorced wife. The point is not persuasive. Congress' concern for the welfare of soldiers' widows sheds little light on Congress' attitude toward. the community treatment of retirement benefits, particularly since those benefits do not survive the serviceman regardless of his marital status at death. It is not incongruous for Congress to supply a program to aid widows, who no longer have husbands to provide sustenance, and omit to do so for ex-wives who can rely on state family law concepts of support, alimony, and community property for a source of income.[11]

■ It is true, as husband points out, that if retirement benefits are community property, upon divorce the portion awarded to the ex-wife will become her separate property. (See *Phillipson* v. *Board of Administration*

---

[9] In *Waite* we held that in view of the purpose of the Judges' Retirement Law (Gov. Code, § 75000 et seq.) to insure the sustenance of retired judges and their wives, and not to benefit their heirs, wife's heirs could not be awarded benefits under the law, notwithstanding the contention that wife would thereby be deprived of her equal portion of husband's pension.

[10] See the revised version of the Retired Serviceman's Family Protection Plan, title 10, United States Code, section 1431 et seq., and the Survivor's Benefit Plan, title 10, United States Code, section 1447 et seq.

[11] Similarly, there is little relevance to the argument that Congress could not have intended military retirement pay be community property because the ex-wife would retain rights against the retired serviceman despite her remarriage, while an annuity to a serviceman's widow is suspended or terminated by remarriage. (10 U.S.C. § 1450.) The treatment of ex-wives and widows does not present analogous problems or considerations.

(1970) *supra,* 3 Cal.3d 32, 44.) It does not follow, however, that should the ex-wife die, her rights would descend to her heirs, and that the serviceman could thus become obligated to the ex-wife's future husband or subsequent children. In California it is clear that the heirs of the ex-wife are not entitled to the portion of the retirement benefits the ex-wife would have received had she lived. (*Waite* v. *Waite* (1972) *supra,* 6 Cal.3d 461.) As stated in *Bensing* v. *Bensing* (1972) *supra,* 25 Cal.App.3d 889, 894 (hg. den.), "The pension terminates with the death of the husband, and wife's share also terminates if she predeceases the husband."

California community property law is not irreconcilable with the military annuity program and as a result incompatible with the retirement system which supplied the premiums for the annuity fund. ▆ Although insurance proceeds are community property to the extent the policy was purchased with community funds (*Grimm* v. *Grimm* (1945) 26 Cal.2d 173 [157 P.2d 841]), the principle does not extend to annuity plans created in the employment context. In *Benson* v. *City of Los Angeles* (1963) *supra,* 60 Cal.2d 355, we held that the rights of a widowed second wife take precedence over those of an ex-wife whose community funds were converted from husband's retirement plan to a related annuity contract. Characterizing retirement benefits as community property, therefore, does not conflict with the serviceman's right to choose an eligible beneficiary under the annuity plans Congress established in coordination with the retirement system.[12]

Although a serviceman's retirement pay does not pass to his family when he dies, the serviceman retains the right to designate a beneficiary to receive any arrearages in pay which are due but unpaid at his death. The designation right is derived from a statute which gives the serviceman a power of testamentary disposition over any money owed to him by the federal government, and it is contended that community property laws interfere with husband's right to choose a beneficiary.[13] However, unlike the insur-

---

[12]One may rationally argue it is unfair to apply California community property law to the retirement benefits of a soldier who served outside California for the greater part of his term of duty, but retired in California comparatively recently. However, California's somewhat unique concept of quasi-community property is of settled validity (*Addison* v. *Addison* (1965) 62 Cal.2d 558 [43 Cal.Rptr. 97, 399 P.2d 897, 14 A.L.R.3d 391]), and no more interferes with the military retirement system than does the application of traditional community property principles to compensation from other employment.

[13]Title 10, United States Code, section 2771, provides: "(a) In the settlement of the accounts of a deceased member of the armed forces . . . an amount due from the armed force of which he was a member shall be paid to the person highest on the following list living on the date of death: (1) Beneficiary designated by him in writing to receive such an amount . . . ."

ance program in *Wissner* in which the right to choose a beneficiary was an integral and explicit part of the federal plan, here we have a designation right constituting no more than a contingency procedure to distribute whatever money, if any, is due to the serviceman but which he failed to collect. We cannot perceive any Congressional intent that the designation right be central to the whole military retirement system or that it foreclose the states from classifying retirement benefits as community property.

Under federal law a disabled serviceman may waive his retirement pay and instead receive a pension from the Veterans Administration. (38 U.S.C. § 3105.) Because some federal cases have referred to pension benefits as gratuities,[14] husband contends such benefits must be the separate property of the serviceman, and therefore retirement pay must be so characterized as well. ■ While it would indeed be inconsistent with community property law to allow the husband to transmute community property into his own separate property, pensions are not considered gratuities under California law and are classed as community property for precisely the same reasons that retirement benefits are community property. (*Waite* v. *Waite* (1972) *supra,* 6 Cal.3d 461; *Phillipson* v. *Board of Administration* (1970) *supra,* 3 Cal.3d 32.) Thus, a disabled serviceman's option to receive a pension instead of retirement pay has no relevance to the issue whether the states may treat either type of benefit as community property.

Next, it is said that California is, in effect, attaching the retirement pay of the serviceman by judicially dividing it as community property, and that, contrarily, Congress intended retirement pay to be immune from attachment since it failed to enact a proposed attachment rider to the Survivor's Benefit Plan (10 U.S.C. § 1447 et seq.). However, the relevant legislative debate makes clear that Congress deleted the attachment provision chiefly because it was extraneous to the annuity bill and because its passage would treat servicemen differently from all other federal employees whose wages, to date, are not subject to attachment by state courts.[15] Congress' action in

---

[14] In *Lynch* v. *United States* (1934) 292 U.S. 571 [78 L.Ed. 1434, 54 S.Ct. 840], the court refers to pensions as gratuities in the sense that, so long as they are not vested, the federal government can redistribute or withdraw them at any time according to the discretion of Congress. The reference has no impact on the states' ability to characterize pension rights under local principles of property law.

[15] Thus the Senate Committee on Armed Services reported: "If the attachment provision were included in this bill, it would make an exception of military retired pay by providing that it alone, among all Federal pays and annuities, would be subject to attachment. The committee felt that this would be an unwarranted and unfair discrimination against the retiree.

"An attachment provision is extraneous to the question of survivor benefit legisla-

failing to enact the attachment rider indicates no more than a desire to postpone the decision on the propriety of state attachment proceedings until such time as all federal payments are under its scrutiny. In any event, an award of a community property share of retirement benefits to wife involves neither an attachment of federal funds nor a demand on the federal paymaster, but instead orders husband after he receives the benefits to fulfill his obligation in the future pursuant to the judgment of dissolution.

Husband finally contends that even if federal military retirement pay can properly be considered community property, such a characterization must cease upon the dissolution of the marriage because retirement pay represents a continuation of active duty pay on a reduced basis, and not remuneration for services performed while husband was married. He relies principally on *Lemly* v. *United States* (1948) 75 F.Supp. 248 [109 Ct.Cl. 760], in which the court purportedly declared a distinction as a matter of federal law between a pension, which is compensation for services previously rendered, and retirement pay, which constitutes consideration for the recipient's continued obligations to the government.[16] In *Lemly,* the court of claims was faced with the question whether a naval reserve officer who contracted a disabling disease while on active duty was entitled to post-retirement compensation for his service-connected disability. Because the court of claims has jurisdiction over claims for retirement pay, but not claims for pensions, the court distinguished the two types of benefits, and determined that retirement pay is compensation for services presently being performed since the recipient is subject at all times to recall to active duty.

Whether retirement pay is a pension and thus excluded from the jurisdiction of the court of claims is far removed from the problem of classifying retirement benefits under state community property law, and is not authoritative on the latter issue. Furthermore, in *Gordon* v. *United States* (1956) 140 F.Supp. 263 [134 Ct.Cl. 840], the court of claims reconsidered the nature of retirement pay and concluded that it is awarded to servicemen "for the reason that it is something they earned while in the service of their country."

---

tion, and all its ramifications could not be evaluated to the extent appropriate or desirable.

"The committee believes that, although the attachment provision may be justified in many instances, it should be addressed from the perspective of its application to all Federal pays and annuities." (118 Cong. Rec. S 14335.)

[16]To some extent *Hostinsky* v. *United States* (1961) 292 F.2d 508 [154 Ct.Cl. 443], and *United States* v. *Hooper* (1958) 9 U.S.C.M.A. 637, distinguish pensions from retirement pay. *Hostinsky* and *Hooper,* however, do not address the issue of which services, past or present, retirement pay rewards, but merely stand for the proposition that retired officers are still members of the armed services with certain limited duties.

Apart from the foregoing judicial declarations on tangential issues, military retirement pay must be realistically viewed as compensation for past, not present, services. Congress' purpose in creating the retirement pay system was to enhance the morale of the serviceman and to encourage him to remain in the military, and not to compensate him for his limited responsibility to the government after his retirement. Indeed, the amount of retirement pay a serviceman receives bears no relation to any continuing duties after retirement, but is calculated solely on the basis of the number of years served on active duty and the rank attained prior to retirement. (10 U.S.C. § 6323(e).) Moreover, should the serviceman actually be recalled to active duty, he is not only additionally compensated according to the active duty pay scale, but his rate of retirement pay is also increased thereafter. (10 U.S.C. § 1402.) ▆▆ The conclusion is inescapable that retirement pay is awarded in return for services previously rendered and therefore is divisible as community property to the extent the serviceman was married while on active duty.

Because we can find no evidence that the application of California community property law interferes in any way with the administration or goals of the federal military retirement pay system, we hold that military retirement pay properly can be characterized as community property in accordance with established principles of California law. No objection has been made to the mathematical computation of the trial court and it appears to be accurate.

The judgment is affirmed.

Wright, C. J., McComb, J., Tobriner, J., Burke, J., Sullivan, J., and Clark, J., concurred.