LOUIS C. SALZ, APPELLANT, v. STATE HOUSE COMMIS-
SION, AN ADMINISTRATIVE AGENCY OF THE STATE
OF NEW JERSEY, RESPONDENT.

Argued February 14, 1955—Decided March 21, 1955.

108 

*Mr. Kenneth J. Dawes* argued the cause for appellant (*Mr. Mario H. Volpe,* attorney).

*Mr. David C. Thompson,* Deputy Attorney-General, argued the cause for respondent (*Mr. Grover C. Richman, Jr.,* Attorney-General, on the brief).

The opinion of the court was delivered by

HEHER, J. We inquire here as to the meaning of *L.* 1941, *c.* 119, as amended by *L.* 1942, *c.* 327, *N. J. S. A.* 38:23–4, for upon that the issue turns. It is thereby provided that a public servant of any of the enumerated classes who shall enter the active military or naval service of the United States or New Jersey, "in time of war or an emergency, or for or during any period of training, or pursuant to or in connection with the operation of any system of selective service," shall be granted "leave of absence for the period of such service and for a further period of three months after receiving his discharge from such service"; or if he shall be "incapacitated by wound or sickness at the time of his discharge from such service," the leave of absence shall be extended "until three months after his recovery from such wound or sickness, or until the expiration of two years from the date of his discharge from such service, whichever shall first occur." And during the "period of such leave of absence" such person shall be "entitled to all the rights, privileges and benefits that he would have had or acquired if he had actually served in such office, position or employment during such period of leave of absence except, unless otherwise provided by law, the right to compensation." The next succeeding sentence is this, signifying a distinction between the terms "compensation" and "pay": "Such leave of absence may be granted with or without pay as provided by law." And then it is provided that such person shall be "entitled to resume the office, position or employment held by him at the time of his entrance into such service, provided

he shall apply therefor before the expiration of his said leave of absence"; and also that "No person who, after entry into such service, shall have been separated from any such service by a dishonorable discharge shall be entitled to any of the rights, privileges or benefits herein conferred."

Colonel Salz, born October 26, 1894, was not eligible for retirement on pension from the State Police when he entered military service on January 6, 1942, after he had been "granted a leave of absence, without pay, for the duration of the National Emergency, effective January 6, 1942," by Special State Police Order No. 160, issued by the Superintendent. He had been in the active service of the State Police since July 1, 1922. The statute, L. 1925, c. 188, as amended by L. 1937, c. 114, R. S. 1937, 53:5-2, then provided for optional retirement when a member had served in the department for 20 years and had attained the age of 50 years. He had made a prior application, October 3, 1946, for retirement on pension under the earlier act but, according to the Commission's minutes, it was denied December 10, 1946 on the ground of ineligibility "for retirement pension until he had been discharged from the Army."

After his induction into the Army, Colonel Salz continued his contributions to the State Police Retirement and Benevolent Fund, R. S. 53:5-1, until the effective date of L. 1942, c. 252, N. J. S. A. 38:23-6, relieving a public servant who enters military service from that responsibility and placing the burden on the agency or subdivision of government from whose service he was absent *pro tempore*, according to the "amount of compensation received by such person prior to his entry into such service." Thereafter, the State made the contributions that would otherwise have been chargeable to Salz; and by a later Special Order No. 229, dated May 3, 1946, the Superintendent of the State Police directed his promotion to the grade of lieutenant, effective May 16, 1946. And now, even though still in military service, Salz invokes L. 1949, c. 251, N. J. S. A. 53:5-2.1, effective July 4, 1949, providing for mandatory retirement when a member has served in the police department for 25 years and has reached

the age of 55 years. While the age prerequisite is met, the applicant has not had the required period of service unless the deficiency of time in actual service is otherwise supplied by statute.

But in *N. J. S. A.* 38:23-4 there is an express exclusion of the "right to compensation" from the reservation of "rights, privileges and benefits" the civil servant entering military service would have had or acquired had he remained in the State service.

It is but reasonable to suppose that the terms "compensation" and "pay as provided by law" have different connotations; the use in successive sentences treating of the same subject matter of these terms of variant implication and import cannot be dismissed as utterly without significance in the manifestation of the legislative design. Words are to be given their common acceptance and usage; but the intent of the lawgiver is to be deduced from the occasion and necessity of the law and the remedy in view, bearing in mind the subordinate rule in aid of intention that particular words may be enlarged or restricted in meaning by their associates and the evident spirit of the whole expression. We look for the sense and reason of the law. The animating principle of the correlated symbols of expression prevails over the strict letter. *Caputo v. Best Foods, Inc.,* 17 *N. J.* 259 (1955).

"Compensation" is a generic term comprehending that which constitutes, or is regarded as, an equivalent or recompense; that which makes good the lack of variation of something else; that which compensates for loss or privation; amends; remuneration; recompense. *Webster's New International Dictionary, 2d ed.* And while "pay" also has the meaning of "compensation," here the term is plainly used in the more limited sense of an equivalent or return for services performed; salary or wages for work or service, reverting to *Webster.* And the leave granted was "without pay."

A public pension, while not contractual in nature, is akin to wages and salaries in that it is payable in stated

installments for the maintenance of the servant after his productive years have ended, and is basically a recompense for past services. *Passaic National Bank & Trust Co. v. Eelman,* 116 *N. J. L.* 279 (*Sup. Ct.* 1936). A "pension" is a stated allowance or stipend in consideration of past services or of the surrender of rights or emoluments to one retired from service. In earlier usage, now obsolete, it also had the meaning of a "payment regularly made to any person; as: *a* To one employed for current services; salary; wages." *Webster, Ibid.*

This concept has general acceptance.

"Pension annuities, after the expiration of the period of active service, are in the nature of compensation for the services previously rendered for which full and adequate compensation was not received at the time of the rendition of such services. They are in effect pay withheld to induce long-continued and faithful service." *Giannettino v. McGoldrick,* 295 *N. Y.* 208, 66 *N. E. 2d* 57. (*Ct. of App.* 1946.)

And in a more recent case involving a disqualification for benefits under the Connecticut Unemployment Compensation Act in the event of "any payment by way of compensation for loss of wages," this is said:

"A pension is, however, closely akin to wages in at least three particulars. It consists of payments made by or provided by an employer. Although it is not paid in direct compensation for services rendered currently, it is paid in consideration of services rendered in the past. It serves the same purpose as wages to the recipient in that it helps him to meet the expense of living. It is a substitute for the wages which the employee has lost by reason of the loss of his job. The payment of a pension, therefore, comes within the plain meaning of the words of the statute. It is a payment made 'by way of compensation for the loss of wages.' " *Kneeland v. Administrator, Unemployment Compensation Act,* 138 *Conn.* 630, 88 *A. 2d* 376, 32 *A. L. R. 2d* 896 (*Sup. Ct. Err.* 1952).

See also *Hooker v. Hoey,* 27 *F. Supp.* 489 (*D. C. N. Y.* 1939), affirmed 107 *F. 2d* 1016 (*2d Circ.* 1939).

And there is a later provision in the same section of the statute, *N. J. S. A.* 38:23–4, which dispels all doubt as to the significance of the earlier terms. A civil servant given the statutory leave of absence shall be entitled to resume his

office, position, or employment "provided he shall apply therefor before the expiration of his said leave of absence"; and a dishonorable discharge from such military service shall render him ineligible for "any of the rights, privileges or benefits herein conferred." Compare *Plunkett v. Board of Pension Commissioners of City of Hoboken*, 113 *N. J. L.* 230 (*Sup. Ct.* 1934).

▮ *L.* 1942, *c.* 252, as amended *N. J. S. A.* 38:23–5, is not of contrary import. It preserves in specific terms the pension rights of civil servants who enter military service under the given conditions; and it makes provision for death or disability while in military service. There shall be no "loss or impairment" of any of the "rights, benefits or privileges" accorded by the laws governing such pension, retirement or annuity funds; and the time spent in such service by any such person shall be considered as "time spent" in the office, position or employment held by him at the time of his entry into such service, "in all calculations" of the amount of pension to which he is entitled and of the years of service required to entitle him to retire; *"provided, however,* that in the event of the death or disability of such person while in such service the pension to be paid such person or his dependents shall be the amount, if any, remaining after calculating the amount of pension that would be paid if such person had continued to hold such office, position or employment until the time of his death or disability and had continued to receive the same compensation as he received at the time of his entry into such service." The absence of a like provision for the payment of the pension when the public servant in military service has attained the age of retirement is significant of the pervasive quality and preeminence of the principle of *N. J. S. A.* 38:23–4. The proviso clearly has in view the termination of military service as the *sine qua non.* Such is the internal sense of the law. The acts are *in pari materia* and are to be taken and compared together in the quest for the overall principle. They are to be assessed as a homogeneous whole for the ascertainment of the common policy. *Pine v. Okzewski*, 112 *N. J. L.*

429 (*E. & A.* 1934); *United States v. Cooper Corporation,* 312 *U. S.* 600, 61 *S. Ct.* 742, 85 *L. Ed.* 1071 (1941); *United States v. American Trucking Association,* 310 *U. S.* 534, 60 *S. Ct.* 1059, 84 *L. Ed.* 1345 (1940); *Nardone v. United States,* 308 *U. S.* 338, 60 *S. Ct.* 266, 84 *L. Ed.* 307 (1939); *Helvering v. New York Trust Co.,* 292 *U. S.* 455, 54 *S. Ct.* 806, 78 *L. Ed.* 1361 (1934).

■ And so it does not matter that Colonel Salz, now more than 55 years of age, is ineligible for continued service in the State Police by force of the mandatory retirement provision of *N. J. S. A.* 53:5–2.1. Until the termination of his leave of absence by separation from military service, he is by the imperative terms of the statute disentitled to "compensation," whether "pay" or pension. The civil servant absent on leave for military service may on separation return to his department of government for active service or, if barred from service by age, for retirement on pension if he fulfills the statutory prerequisites. The applicant here will have, in such event, the status arising from membership in the State Police essential to the enforcement of such rights as may be his under the statute.

■ We are in accord with the reasoning and result of the opinion delivered by Judge Clapp for the Appellate Division, and the direction that the judgment be without prejudice to a reconsideration of the applicant's rights "either in the event an application is made upon his separation from active service in the Army or in the event of his disability or death." The issue of abandonment and forfeiture of office by continued absence from the State service may then be litigated and determined.

Affirmed.

*For affirmance*—Justices HEHER, BURLING, JACOBS and BRENNAN—4.

*For reversal*—Chief Justice VANDERBILT, and Justices OLIPHANT and WACHENFELD—3.