The Government moved in that case, as here, to dismiss the first protest on the ground that it was prematurely filed. Our appeals court affirmed the decision of this court dismissing that protest as premature.

"Regardless of how taxes may be designated by the Congress, if they are imposed on imports while in customs custody, they are essentially customs duties and are determinable and collectible as prescribed by law. * * * 19 C.C.P.A., Customs, at page 12.

"Protest 276973–G, filed prior to liquidation, related to the rate and amount of duties chargeable against the imported merchandise. Such questions can be raised by protest after, but not before, liquidation. Accordingly, the court below was right in dismissing this protest as premature. * * *" 19 C.C.P.A., Customs, at page 14.

In United States v. B. Holman, Inc., 1941, 29 C.C.P.A., Customs, 3, C.A.D. 164, discussed by plaintiff in its brief (and cited with approval in Dart Export Corp. v. United States, 43 C.C.P.A., Customs, 64, our appeals court said, 29 C.C.P.A., Customs, at page 14:

" * * * all decisions of the collector involved in the ascertaining and fixing of the rate and amount of duties chargeable against imported merchandise entered for consumption are merged in and become a part of a legal liquidation, and it is a legal liquidation only, so far as the issues here are concerned, against which a protest will lie. * * *"

Plaintiff's protest 265822–K seems to rest on the premise that the payment of duties, including the protested fee, at the time of entry was such a legal decision by the collector as section 514 contemplates. In the Dart case, supra, our appeals court recently held (p. 47 of Treasury Decisions, dated April 5, 1956, vol. 91, No. 14):

" * * * that the assessing of duties at the time of entry was not a 'decision' within section 514, supra, which was final and conclusive after 60 days had elapsed which would deprive the Government of the right to liquidate the entry at a subsequent date. * * *" [Italics quoted.]

Defendant's motion to dismiss protest 265822–K is granted on the ground that it was prematurely filed. Defendant's motion to dismiss protest 265823–K is denied for the reasons we have stated.

George R. GOETHALS and Priscilla H. Goethals

v.

The UNITED STATES.

No. 198–54.

United States Court of Claims.
Jan. 16, 1957.

John S. Nolan, Washington, D. C., for plaintiff. David W. Richmond and Miller & Chevalier, Washington, D. C., were on the brief.

Leo M. McCormack, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. Andrew D. Sharpe and H. S. Fessenden, Washington, D. C., were on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

MADDEN, Judge.

The plaintiffs, husband and wife, sue to recover amounts paid by them as income taxes for the years 1949, 1950, and 1951. They claim that the money paid the plaintiff George R. Goethals, hereinafter called the plaintiff, by the Government in those years, which was the supposed income upon which the taxes were based, was not taxable income, but was a series of non-taxable gifts to him by the Government.

The plaintiff graduated from the United States Military Academy in 1908 and was commissioned as a Second Lieutenant in the Regular Army. For five of the six years after receiving his commission, he served in the Panama Canal Zone, doing supervisory work in connection with the construction of the canal. His service there ended on August 1, 1914. He remained in the Army, however. He had been promoted to First Lieutenant before he left the Canal Zone. He was promoted to Captain in 1915, Major in 1917, Lieutenant Colonel (temporary) in 1918, and Colonel in 1918.

By the Act of March 4, 1915, c. 167, 38 Stat. 1190, Congress extended its thanks to certain named high officers of the Army, Navy and Public Health Service, who had participated in the construction of the canal, authorized the President to advance those named officers in rank to certain designated grades, provided for the advancement in rank one grade upon retirement of any officer who had served with the Isthmian Canal Commission for more than three years, and, in its section 6, 10 U.S.C.A. § 1028, provided as follows:

"That at any time after the passage of this Act any officer of the Army or Navy to be benefited by the provisions of this Act may, on his own application, be retired by the President at seventy-five per centum of the pay of the rank upon which he is retired."

The plaintiff could, of course, have retired with 75 percent of his active duty pay immediately after the passage of the Act of March 4, 1915. However, he remained in the Army during World War I, as we have seen. On August 4, 1919, he retired, upon his own application. His permanent rank was Major, but, pursuant to the 1915 Act, he was placed on the retired list in the permanent grade of Lieutenant Colonel, and was paid 75% of the active duty pay of that grade. By the Act of June 21, 1930, c. 563, 46 Stat. 793, 10 U.S.C.A. § 1028a, he was advanced to the courtesy grade of Colonel on the retired list. This action did not increase his retired pay.

The plaintiff was recalled to active duty in the grade of Major in 1940, was advanced to Lieutenant Colonel in 1942, and later in the same year to Colonel. He was relieved from active duty in 1946, reverting to his previous retired status with the courtesy grade of Colonel and 75% of the pay of a Lieutenant Colonel.

By the Act of June 29, 1948, c. 708, 62 Stat. 1081, 10 U.S.C.A. § 580 et seq., he was advanced to the grade of temporary Colonel on the retired list. Although he should, from that time, have received 75% of the pay of a Colonel, he did not, due to an error, receive the increase in his retired pay until 1955, when the arrears were paid to him.

■ As we said at the outset, the plaintiff urges that his retired pay for the years in question, 1949, 1950 and 1951, constituted gifts to him by the United States. He says that Congress was under no obligation to him, at the time it passed the Act of March 4, 1915. He had been paid the statutory pay for his services in the construction of the canal. But the privilege of earlier than normal retirement which the 1915 Act granted to the plaintiff and other officers, was closely related to the services which they had rendered, under difficult and dangerous conditions, to their employer the United States. If Congress had made an immediate grant of an additional year's salary to these officers in 1915, the situation would have been the not unusual one of the award of a bonus to a valued executive upon his retirement after a successful administration. Generally, when such payments are made by the employer, they constitute taxable income; Nickelsburg v. Commissioner, 2 Cir., 154 F.2d 70; Fisher v. Commissioner, 2 Cir., 59 F.2d 192; Willkie v. Commissioner, 6 Cir., 127 F.2d 953.

In Bogardus v. Commissioner, 302 U. S. 34, 58 S.Ct. 61, 65, 82 L.Ed. 32, relied on by the plaintiffs, the payments were not made by the employer, but by a new corporation formed by the stockholders of the employer, who had sold their stock in the employer corporation at an enormous profit and were accordingly grateful to the employees of the former corporation for having made such a success of it. It would, of course, be difficult to regard one as having given compensation, or additional compensation, to one who had never been his employee, but to whom, as a result of collateral circumstances, he felt grateful. And in Bogardus, the Government and the taxpayer stipulated "that the disbursements were *not made or intended to be made* [1] for any services rendered or to be rendered or for any consideration given or to be given" to the payor or any of its stockholders.

■ Officers' retired pay normally is taxable income, except in unusual circumstances in which Congress has expressly exempted it from taxation. By providing for retirement with pay the Government makes the military career attractive, it keeps a hold upon retired officers because they are subject to recall to active duty if needed, and it expresses its gratitude to officers for faithful service. If a retirement statute should provide that officers whose services were of the usual kind should have the privilege of retirement after 30 years service, and officers whose services were in a mosquito infected, disease ridden area should have the privilege after three years service, the retired pay of the two kinds of retirees would have the same status for tax purposes. But the plaintiff, in effect, says that if the three year privilege was not granted by Congress until after the requisite three years had been served, then the privilege is a gift. If that were the test, it would have important consequences. It would mean, for example, that if Congress should reduce the required period of service for retirement eligibility from 30 years to 25 years, all those officers who had already served 25 years and could immediately retire could treat their retired pay as non-taxable gifts. And if Congress made special provisions for retirement for those suffering battle casualties, or for those receiving awards for heroism, those who had qualified before the statute was passed would receive their retired pay as non-taxable gifts, and those who qualified later would receive their retired pay as compensation. The same distinction would be applica-

---

1. Italics in original.

ble to percentage or other additions to retired pay and to advancement in rank resulting in increases in pay under circumstances specified by Congress. The Career Compensation Act of 1949, c. 681, 63 Stat. 802, 37 U.S.C.A. § 231 et seq., extending new privileges and options to officers already retired, would become a fruitful source of tax litigation.

The Government suggests an interesting application of section 22(b) (3) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 22(b) (3) which, after providing that gifts should be excluded from gross income, says that the income derived from property acquired by gift shall not be excluded. The Government says that, assuming that the Act of March 4, 1915 made a gift to the plaintiff, the thing given was the privilege of retiring, but that the income whch the plaintiff derived from the exercise of the privilege was taxable income.

If the plaintiff had used the privilege in 1915, his retired pay would have been that of a Captain. In fact he used it in 1919 after he had been promoted to Major, and hence his retired pay was that of a Lieutenant Colonel. Congress from time to time made increases in the retired pay of all officers, quite certainly with no intention of making additional gifts to the plaintiff. His recall to active service and the enactment of the Act of June 29, 1948, again increased his retired pay, with no intent on the part of the Army or Congress to make a special donation to the plaintiff.

The Government's suggestion is interesting, but it is not necessary for us to decide whether it is valid, since regardless of its validity, we have concluded that the retired pay in question was not a non-taxable gift, but was taxable income.

This Court's decision in Dewling v. United States, 101 F.Supp. 892, 121 Ct. Cl. 635, that annuities granted by Congress to civilian employees of the Panama Canal project in 1945, thirty years after their work at the canal was ended, and, no doubt in some cases, that long or almost that long after they had left Government service, were non-taxable gifts, may be distinguishable on the ground of the remoteness of the payment, in point of time, from the service. The statute there in question, the Act of May 29, 1944, 58 Stat. 257, 48 U.S.C.A. § 1373 et seq., did not put the former civilian employees into a classification which included numerous other Government employees whose retired pay was undoubtedly taxable income. It did not make their annuities dependent upon future general legislation having nothing to do with the Panama Canal employment, but affecting all or many retired civilian employees of the Government. The Dewling decision neither compels nor persuades us to decide that the plaintiff's retired pay was a gift.

The plaintiff's petition will be dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE, WHITAKER and LITTLETON, Judges, concur.