139 N.J. Super. 413 (1976)
354 A.2d 340
BARBARA W. KRUGER, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT,
v.
RICHARD O. KRUGER, DEFENDANT-APPELLANT AND CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 5, 1975.
Decided February 23, 1976.
*414 Before Judges KOLOVSKY, BISCHOFF and BOTTER.
Mr. Neil Braun argued the cause for appellant (Messrs. Rudd and Ackerman, attorneys).
*415 Mr. William E. Ozzard argued the cause for respondent and cross-appellant (Messrs. Ozzard, Rizzolo, Klein, Mauro & Savo, attorneys).
The opinion of the court was delivered by BISCHOFF, J.A.D.
In this divorce action defendant has appealed from the adjudication of certain financial aspects of the marital dissolution, also complaining that the judgment of divorce failed to contain a provision awarding him a divorce on the grounds of extreme cruelty despite the fact that the trial judge's written opinion expressed the intention to grant a divorce to both parties. N.J.S.A. 2A:34-7. Plaintiff has cross-appealed, contending that she should have been awarded a larger share of the distributable assets.
The parties were married on May 6, 1950 and three children were born to them. Two children were of age at the time of the divorce; the third was 16 years old. All three resided with plaintiff in the former marital home. Custody of the youngest daughter was awarded to plaintiff.
The judgment for divorce contained a number of provisions adjudicating the financial claims of the parties. The principal issue on this appeal concerns the treatment of defendant's future military retirement pay and disability benefits. At the time of trial the defendant was receiving such benefits. The trial judge ruled that such funds were distributable assets of the marriage. The distributable portion earned during marriage was determined to be 213/343rds of the total benefits, corresponding to the number of months when defendant was both married and in military service compared with the total number of months he was in the military, starting in July 1939 to his retirement in February 1968. The judge ordered defendant to pay a third of 213/343rds of the total of such benefits to plaintiff "forthwith upon receipt of each payment by him."
No alimony was awarded to the wife, but defendant was ordered to pay $30 a week for the support of the minor *416 child. Paragraph B of the divorce judgment states the reason given by the trial judge in his written opinion for this determination, namely:
It is to be noted that these determinations as to alimony and child support are based upon the fact that defendant is presently unemployed and his income consists only of the retirement and disability benefits.
In deciding that defendant's retirement pay (designated in the statute as "retired pay," 10 U.S.C.A. § 6323) was subject to equitable distribution, the trial judge relied on decisions in community property states cited in Tucker v. Tucker, 121 N.J. Super. 539 (Ch. Div. 1972). The judge cited Mora v. Mora, 429 S.W.2d 660 (Tex. Civ. App. 1968), as setting forth the rationale for treating an interest in a military retirement plan as an earned property right which is distributable to the extent acquired during marriage. In Mora the court reasoned that retirement and pension plans represent "a mode of employee compensation" which is an earned property right. Id. at 662. In Tucker, supra, 121 N.J. Super. at 549, the court quoted the following holding from Williamson v. Williamson, 203 Cal. App.2d 8, 11, 21 Cal. Rptr. 164, 167 (D. Ct. App. 1962)[1];
Pensions become community property, subject to division in a divorce, when and to the extent that the party is certain to receive some payment or recovery of funds. To the extent that payment is, at the time of the divorce, subject to conditions which may or may not occur, the pension is an expectancy, not subject to division as community property.
The trial judge below concluded:
The retirement and disability benefits now vested in defendant constitute assets acquired by him during the marriage and, for the *417 present purposes, are of the same nature as other assets acquired with the earnings derived from his employment. Accordingly, these benefits constitute an asset subject to distribution, to the extent earned during the marriage.
The practical consequences of treating pension or retirement payments as distributable property or as income are numerous and variable. If these payments are considered distributable property, a spouse who remarries would normally continue to receive a share of such payments. If they are treated as income, however, remarriage would cut off the right to a share as alimony. As distributable property, a spouse would receive only a portion of those future payments which are deemed earned during the marriage interval. Here the trial judge determined that approximately 62% of pension and disability payments were earned during the marriage. However, if these payments were treated as income when received, the entire sum would be available for alimony purposes.
For federal income tax purposes, pension payments are treated as income taxable to the recipient when received. 26 U.S.C.A. § 61(a) (11); 26 U.S.C.A. § 402 et seq. Thus, if pension payments are distributable property, the entire income tax on that sum could be assessed against the recipient, but no tax would be assessed against the spouse who receives a portion as distributable property. However, if pension payments are treated as income under our divorce laws, that portion which is awarded to a spouse as alimony could be deducted from the pensioner's gross income, 26 U.S.C.A. § 215(a), and would be taxable to the spouse receiving a share as alimony. 26 U.S.C.A. § 71(a) (1).
Putting aside these practical consequences for now, we may consider the issue by examining the nature of such payments conceptually. Pension payments are no longer considered a gratuity for faithful service; they are to some extent a "recompense for past services." Salz v. State House Comm'n., 18 N.J. 106, 111-112 (1955). Such payments are obviously designed to support an employee during his *418 years of declining working ability. In Salz the court said that
* * * [a] public pension * * * is akin to wages and salaries in that it is payable in stated installments for the maintenance of the servant after his productive years have ended * * *. [at 111-112]
Logically, therefore, it can be argued that the right to such payments should be treated as property "acquired" during the marriage "legally and beneficially" within the meaning of N.J.S.A. 2A:34-23.[2]
Although at the time of trial no effort was made to determine the specific source of the pension funds to be received, we have been advised by supplemental material that no part of defendant's salary was deducted and retained to fund the retired pay or disability benefits. Pension plans, and the rights of employees to withdraw contributions or otherwise receive payments, may vary widely. In the case at hand defendant has no right to a lump sum payment, and we are told that such payments will terminate at the time of his death. However, both payments are subject to increase by Congressional action.
While the cases of Pellegrino v. Pellegrino, 134 N.J. Super. 512 (App. Div. 1975); Scherzer v. Scherzer, 136 N.J. Super. 397 (App. Div. 1975); and White v. White, 136 N.J. Super. 552 (App. Div. 1975), deal generally with the problem of equitable distribution as it pertains to specific pension plans, they do not involve the precise issue now before us.
*419 The case of In the Marriage of Fithian, 10 Cal.3d 592, 111 Cal. Rptr. 369, 517 P.2d 449 (Sup. Ct.), cert. den. 419 U.S. 825, 95 S.Ct. 41, 42 L.Ed.2d 48 reh. den. 419 U.S. 1060, 95 S.Ct. 644, 42 L.Ed.2d 657 (1974), was decided under principles of community property law,[3] but its holding and reasoning are persuasive. There the court affirmed a ruling that since the husband had been married for 16 years of his 22 years of military service, 71% of his military pay to which he had become entitled constituted community property so that one-half thereof (or 35 1/2% of the total pay) belonged to the wife. The court said:
Underlying the community treatment of retirement benefits is the concept that they do not derive from the beneficence of the employer, but are properly part of the consideration earned by the employee. Thus whether an employee is required to make contributions to the retirement fund is irrelevant to the ultimate characterization of the benefits as community property (citations omitted). Furthermore, the principle that retirement benefits are community property has been held to apply whether the source of the retirement fund lies in a state, federal, military, or private employment relationship (citations omitted).
The conclusion follows that husband's federal military retirement pay must be considered community property in accordance with established principles of California law. Although the retirement fund was noncontributory, husband's rights to the benefits vested during marriage and constituted an integral part of his compensation for service in the military. [at 371, 517 P.2d at 451.]
* * * retirement pay is awarded in return for services previously rendered and therefore is divisible as community property to the extent the serviceman was married while on active duty. * * * [at 377, 517 P.2d at 457.]
The majority of the reported cases involving this issue have been from community property states and the foregoing *420 represents the prevailing view. Ramsey v. Ramsey, 96 Idaho 672, 535 P.2d 53 (Sup. Ct. 1975); Wilder v. Wilder, 85 Wash.2d 364, 534 P.2d 1355 (Sup. Ct. 1975); Payne v. Payne, 82 Wash.2d 573, 512 P.2d 736 (Sup. Ct. 1973); Otto v. Otto, 80 N.M. 331, 455 P.2d 642 (Sup. Ct. 1969); In re Marriage of Wilson, 10 Cal.3d 851, 112 Cal. Rptr. 405, 519 P.2d 165 (Sup. Ct. 1974). A contrary result was reached in the case of In re Marriage of Ellis, 538 P.2d 1347 (Colo. Ct. App.), cert. granted Colo. App., 538 P.2d 1347 (1975). This case arose in Colorado, which is not a community property state.[4] In the few instances where both retired pay and disability benefits were involved, the same result was reached as to both. Dominey v. Dominey, 481 S.W.2d 473 (Tex. Civ. App.), cert. den. 409 U.S. 1028, 93 S.Ct. 462, 34 L.Ed. 2d 321 (1972).
Our Supreme Court held in the case of Painter v. Painter, 65 N.J. 196 (1974), that all property, regardless of its source, in which a spouse acquires an interest during the marriage shall be eligible for distribution in the event of divorce. Id. at 217.
We therefore conclude that both the retired pay and disability benefits which defendant husband has become irrevocably entitled to receive for the balance of his life constitute assets subject to equitable distribution to the extent that his entitlement thereto is based upon military service rendered during the existence of the marriage.
Having reached that conclusion, an additional consideration becomes immediately apparent. Holding the retired pay and disability benefits to be distributive assets, the wife's share attaches upon entry of the divorce. Consideration of general principles of property would dictate that in the event she would predecease her former husband, she could bequeath her distributive share to another, including a subsequent husband. We are satisfied that both the Legislature and the *421 Supreme Court, Chalmers v. Chalmers, 65 N.J. 186 (1974); Painter v. Painter, supra; Rothman v. Rothman, 65 N.J. 219 (1974), intended to require that the distribution be equitable under all the circumstances. Such a result would not be equitable.
Returning again to the case of In the Marriage of Fithian, supra, that court was faced with this precise issue and resolved it in the following fashion:
* * * It is true, as husband points out, that if retirement benefits are community property, upon divorce the portion awarded to the ex-wife will become her separate property. (See Phillipson v. Board of Administration (1970), supra, 3 Cal.3d 32, 44, 89 Cal. Rptr. 61, 473 P.2d 765.) It does not follow, however, that should the ex-wife die, her rights would descend to her heirs; and that the serviceman could thus become obligated to the ex-wife's future husband or subsequent children. In California it is clear that the heirs of the ex-wife are not entitled to the portion of the retirement benefits the ex-wife would have received had she lived. (Waite v. Waite (1972), supra, 6 Cal.3d 461, 99 Cal. Rptr. 325, 492 P.2d 13.) As stated in Bensing v. Bensing (1972), supra, 25 Cal. App.3d 889, 894, 102 Cal. Rptr. 255, 258 (hg. den.), "The pension terminates with the death of the husband, and wife's share also terminates if she predeceases the husband." [Id. 111 Cal. Rptr. at 374, 517 P.2d at 454.]
In order to insure that distribution be equitable, an order for distribution of regular payments received by a husband from a military retirement system as retired pay or from a disability pension should provide for termination of the obligation to make payment of such benefits upon the death of the wife.
While this method of treatment may give such benefits the hybrid attributes of both income and distributive property, the necessity for such innovative treatment of individual problems was expressly recognized by the court in Painter v. Painter, supra, 65 N.J. at 218, n. 7. Further, there must be a recognition of the fact that treatment of retired pay and disability benefits in this fashion may impose an inequitable income tax burden upon the husband who would, in effect, be compelled to pay the income tax on the *422 wife's distributive share of the regular payments. 26 U.S.C.A. § 61(a) (11); 26 U.S.C.A. § 401 et seq. The Supreme Court in Painter v. Painter, supra at 212, noted that it would be appropriate for the court in making equitable distribution to give sympathetic consideration to the tax aspects of the order of distribution. We, therefore, hold that a judge in making an award of equitable distribution in this context should provide for distribution to the wife of a share of only the net pay, that is, after deduction of the federal income taxes  and indeed any other similar taxes  applicable to it.
We have considered the balance of the issues raised by this appeal and cross-appeal and find them to be without merit.
We accordingly remand the matter to the trial court for reconsideration of the form of the judgment of equitable distribution of the retired pay and disability payments and the fashioning and entry of an appropriate order consistent with the views expressed herein.
As we noted at the outset of this opinion, defendant contends the final judgment should include a divorce in his favor as found by the trial judge in his written opinion. This omission appears to have been an oversight and should be corrected on the remand.
BOTTER, J.A.D. (dissenting).
In my opinion the pension (military retirement pay) and disability benefits are income and not capital assets. These payments should be available for the support needs of both spouses and their dependent children after divorce and should be subject to the continuing power of the court to alter the amount of alimony and child support according to the needs of the parties. These funds should not be treated as assets to be divided with finality at the time of the divorce in the same manner as other capital assets are divided.
The majority opinion recognizes that pension and disability benefits have characteristics of income. The payments are made on a monthly basis into the future and terminate on *423 the death of the recipient. In Re Marriage of Ellis, 538 P. 2d 1347, 1349 (Colo. Ct. App.), cert. granted, Colo. App., 538 P.2d 1347 (1975). There is no lump sum value or right of withdrawal. Id. For federal income tax purposes pension payments are treated as income when received. 26 U.S.C.A. § 61(a) (11); 26 U.S.C.A. § 402(d); Hoeppel v. Westover, 79 F. Supp. 794, 795 (S.D. Cal. 1948); Goethals v. United States, 147 F. Supp. 757, 759, 137 Ct. Cl. 351 (1957). Defendant testified that income tax was withheld from his military retirement pay and that he received $722 a month after deductions.
The purpose of government pensions is to induce faithful, career service by providing for the subsistence of the employee (and dependents) "after his productive years have ended." Salz v. State House Comm'n, 18 N.J. 106, 111-112 (1955); Waite v. Waite, 6 Cal.3d 461, 473, 99 Cal. Rptr. 325, 333, 492 P. 2d 13, 21 (Sup. Ct. 1972). As such it has been held, as the majority does here, that payments to be made to the wife even as "distributable property" will cease upon her death, just as alimony ceases, giving her no right to bequeath such property to a future husband or to relatives or friends. In Re Marriage of Fithian, 10 Cal.3d 592, 601, 111 Cal. Rptr. 369, 374, 517 P.2d 449, 454 (Sup. Ct. 1974); Waite v. Waite, supra. This construction was reached in Waite v. Waite on the ground that the legislative intent in establishing the pension (the Judge's Retirement Law) was to provide subsistence for the employee and his spouse, not her beneficiaries, and that her need for subsistence ends with her death.
Defendant's disability payments are also intended for his maintenance and support. Porter v. Aetna Cas. & Sur. Co., 370 U.S. 159, 162, 82 S.Ct. 1231, 1233, 8 L.Ed.2d 407, 410 (1962). This is especially significant because of the impairment of earning capacity generally accompanying disability. As such, the payments cannot be deemed earned in the past, but should be treated as income when received, *424 constituting benefits paid to offset current wages lost because of the veteran's diminished earning capacity.
Accordingly, Congress has provided that disability benefits paid through the Veterans' Administration are not assignable, are exempt from taxation and the claims of creditors and are not liable to attachment, lien or other seizure "before or after receipt by the beneficiary." 38 U.S.C.A. § 3101; Porter v. Aetna Cas. & Sur. Co., supra; Lawrence v. Shaw, 300 U.S. 245, 57 S.Ct. 443, 81 L.Ed. 623 (1937). The purpose is to safeguard the funds so that they may be used as the "needs of the veteran may require." Id., 300 U.S. at 250, 57 S.Ct. at 445, 81 L.Ed. at 627. These needs would include the support of a divorced wife who is awarded alimony (In re Flanagan, 31 F. Supp. 402 (D.D.C. 1940); see also, State v. Monaco, 81 N.J. Super. 448, 451 (Law Div. 1963)) because of her financial dependency.
One of the innovations of the new Divorce Act (L. 1971, c. 212) is its provision for the right to share in assets acquired during marriage regardless of marital fault. N.J.S.A. 2A:34-23; Chalmers v. Chalmers, 65 N.J. 186, 194 (1974). Equitable distribution is not conditioned, as is alimony, on the "actual need" of the parties. N.J.S.A. 2A:34-23. I would hold that these pension and disability payments are not assets acquired until actually received but constitute income available for the support of either spouse and dependent children according to their needs. This holding would conform to the legislative intent in providing such benefits for public employees.
It is important to allow for change in support orders to meet changing conditions. N.J.S.A. 2A:34-23; Martindell v. Martindell, 21 N.J. 341, 352 (1956). This is especially desirable in dealing with pension payments since pensioners are usually older. Their incomes may be more limited and their needs more critical.
In the case at hand the trial judge in a written opinion held that the wife should share the pension and disability *425 benefits as distributable property. She was employed, and the trial judge ordered that no alimony be paid to her. Defendant was ordered to pay support for a 16-year-old child in plaintiff's custody. The trial judge then stated that these determinations were premised upon the fact that defendant is presently unemployed and "his income consists only of the retirement and disability benefits." (Emphasis supplied).
Referring to these payments as income simply expresses the force of common understanding as to their nature. I would hold that these payments are income available for alimony and child support after divorce.
The cause should be remanded to the trial court for further proceedings consistent with these views.
NOTES
[1] Cited with approval in Phillipson v. Bd. of Administration, 3 Cal.3d 32, 40-41, 89 Cal. Rptr. 61, 66, 473 P.2d 765, 770 (Sup. Ct. 1970).
[2] See Stern v. Stern, 66 N.J. 340, 348 (1975), with respect to a partnership's accounts receivable, where the court observed that "the concept of vesting should probably find no significant place in the developing law of equitable distribution" since the statute merely refers to property acquired during marriage. However, the court left open the "difficult question as to what future interests may qualify as `property' within the meaning of N.J.S.A. 2A: 34-23."
[3] In Painter v. Painter, 65 N.J. 196, 216 (1974), the court indicated that it did not consider the statute authorizing equitable distribution, N.J.S.A. 2A:34-23, as a rejection of the common law theory of property and the adoption of community property law. However, we do not read that opinion as a bar to the consideration of the developing principles of community property law which may, by logic, be of assistance in the interpretation of this statute.
[4] In that case there was a dissent filed and the case is presently on appeal.