**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4885-17T1

WALL TOWNSHIP EDUCATION
ASSOCIATION, KATHLEEN F.
DORAN, a resident, taxpayer, and
voter of Wall Township and a parent
of Wall Township Schools students,
GAIL MAHER, a member of the Wall
Township Education Association,
EUGENE DeLUTIO, a member of the
Wall Township Education Association
KATHLEEN SAYERS, a member of the
Wall Township Education Association,
ROBERT LEACH II, a member of the
Wall Township Education Association,
JAIMIELYNN CAMPBELL, a member
of the Wall Township Education Association,
and KRISTY ANSBACH, a member of the
Wall Township Education Association,

      Petitioners-Appellants,

v.

BOARD OF EDUCATION OF THE WALL
TOWNSHIP SCHOOL DISTRICT,
MONMOUTH COUNTY and CHERYL
DYER, Superintendent of Schools for the
Wall Township School District,

Respondents-Respondents.

_____

Argued December 17, 2018 – Decided March 14, 2019

Before Judges Sumners and Mitterhoff.

On appeal from the Commissioner of Education, Docket No. 252-10/17.

Flavio L. Komuves argued the cause for appellants (Zazzali, Fagella, Nowak, Kleinbaum & Friedman, attorneys; Flavio L. Komuves, of counsel and on the brief; Raymond M. Baldino, on the briefs).

Michael J. Gross argued the cause for respondent Wall Township Board of Education (Kenney, Gross, Kovats & Parton, attorneys; Michael J. Gross, of counsel; Daniel R. Roberts, on the brief).

Andrew Babiak argued the cause for respondent Cheryl Dyer (Andrew Babiak, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent Commissioner of Education (Caroline G. Jones, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

This appeal from a final agency decision by the Commissioner of Education (the Commissioner) concerns whether the Wall Township Board of Education (the Board) and Superintendent Cheryl Dyer (collectively respondents) may mutually agree to "rescind" her employment contract prior to

2

its expiration date and enter into a new contract without triggering the public notice and public hearing requirements of N.J.S.A. 18A:11-11. The Commissioner held that the plain language of the statute does not specifically cover a "rescission" and the subsequent replacement of the superintendent's contract and, thus, respondents did not have to comply with the statute. Even though we strive to give substantial deference to the Commissioner's interpretation of a statute he has the authority to enforce, we reverse because under our rules of statutory interpretation, the plain language of N.J.S.A. 18A:11-11 cannot be applied to create an absurd result that effectively circumvents, if not avoids, public notice and a public hearing regarding Dyer's new employment contract under the circumstances presented in this matter.

I

The record reveals the following facts. In September 2014, in accordance with an employment contract, Dyer was appointed Superintendent of Schools for the Wall Township School District, for a five-year term beginning September 23, 2014, and ending June 30, 2019. The contract contained an escalator clause that allowed Dyer to negotiate a salary increase with the Board in the event salary caps for school superintendents imposed by the Department of Education (the Department) were lifted. See N.J.A.C. 6A:23A-1.2.

In May 2017, new salary caps were put into effect by the Department. In response, Monmouth County Executive County Superintendent, Dr. Lester W. Richens, sent a countywide email to all superintendents advising that they could begin negotiating salary increases with their respective school boards. He further counseled that, if their current employment contract was amended, "there must be an advertised public hearing on [their] contract amendment[s]," but "[i]f [they] rescind [their] old contract[s] and a new contract is negotiated that replaces any existing contract, then there is no public hearing[,]" under N.J.S.A. 18A:11-11.

Dyer and the Board, subsequently agreed in principle to "rescind" her original contract and enter into a new five-year contract ending at the conclusion of the 2021-2022 school year, with, among other things, a higher salary and increased vacation time. Complying with N.J.A.C. 6A:23A-3.1, Dyer submitted her proposed contract to Dr. Richens on September 1 for his review and approval, which he approved the same day. Fourteen days later, the Board put Dyer's proposed employment contract on its agenda for approval at its September 19 public meeting.

A few days prior to the meeting, Dyer, apparently sensing dissent among the Board members over the length of the proposed employment contract,

advised Dr. Richens that the contract would be reduced to a three-year term ending at the conclusion of the 2019-2020 school year. Dr. Richens, on the day of the Board meeting, approved the contract with the shorter term. An hour before the meeting, Dyer notified the Board of the contract changes and Dr. Richens' approval. With neither public notice nor a public hearing, the Board approved Dyer's new employment contract that evening.

A little over a month later, Wall Township Education Association and its members Gail Maher, Eugene Delutio, Kathleen Sayers, Robert Leach II, Jaimielynn Campbell, Kristy Ansbach, and Kathleen F. Doran, a resident and parent of Wall Township schools' students (collectively petitioners), appealed the Commissioner to rescind the Board's decision. They alleged the Board violated N.J.S.A. 18A:11-11 by altering Dyer's employment contract without thirty-day public notice and a public hearing. The Commissioner transferred the case as a contested hearing to the Office of Administrative Law.

Following consideration of the parties' respective motions for summary disposition, the Administrative Law Judge (ALJ) issued his initial decision recommending that the petition be dismissed. The ALJ determined the legislative intent of N.J.S.A. 18A:11-11 and contract law did not suggest that mutual "rescission" of Dyer's employment contract and entering into a new

contract in its place, was forbidden.  The ALJ determined the Legislature, for whatever reason, elected to omit the term "rescind" from the statute, thus "it must be presumed [the Legislature] was familiar with the various legal terms relevant to contracts and their meaning," and because a "rescission" involves termination of a contract rather than "a 'going-back' to re-open and reformulate the existing terms" of the contract, there was no amendment, extension or alteration to the terms to trigger the statute's public notice requirement.

Additionally, the ALJ determined there was no merit to petitioners' arguments that N.J.S.A. 18A:11-11 was intended to promote openness and transparency, and that respondents' actions were a "lawyer's trick" to undermine the statute's overall goal.  He noted petitioners' interpretation of the Governor's Signing Statement regarding the statute, was misleading and the actual wording "does not indicate the literal wording of the statute does not reflect the legislative intention."  Examining N.J.A.C. 6A:23-3.1(c)(1), the ALJ explained the regulation does not require any advance public notice or a mandatory public hearing when a new superintendent contract replaces an expired contract, and, thus "demonstrates that the Legislature . . . has not seen fit to extend these 'transparency' or 'public input' provisions to all situations where a board [of education] decides" to approve a superintendent's employment contract.

6

The Commissioner, after considering exceptions to the initial decision, issued his final agency decision adopting the ALJ's recommendation, and denied petitioner's motions and granted summary disposition to respondents.

II

Before us, petitioners raise the same arguments that were rejected by the Commissioner. They contend the Commissioner failed to apply the proper canons of statutory construction to his interpretation of N.J.S.A. 18A:11-11, leading to an unjust result that prevented the public from receiving notice of and having a public hearing concerning the Board's agenda item to approve a new employment contract for Dyer. Contending the statute is remedial because it furthers our state's interest in promoting government transparency, similar to the Open Public Meetings Act (OPMA), N.J.S.A. 10:4-6 to -21, and Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, petitioners maintain the substance of Dyer's proposed new contract should be considered over its form to require public notice and a public hearing. Petitioners further assert the Commissioner's interpretation creates an absurd result because he and respondents refer to the new contract negotiations as a literal "rescission" and replacement of the then existing contract. But in reality, petitioners maintain respondents merely amended their relationship – without interruption of Dyer's

7

employment and alteration of her contractual responsibilities or authority as superintendent – in order to provide Dyer an extended term of employment, a higher salary and increased vacation time.

We begin with the principles that guide our review of an agency's decision to grant a summary disposition. Our review of a motion for summary decision before an administrative agency is largely the same as the standard for granting motions for summary judgment under Rule 4:46-2. Contini v. Bd. of Educ., 286 N.J. Super. 106, 121 (App. Div. 1995). However, our review of an agency's summary decision differs slightly from our de novo review of a court's grant of summary judgment. Busciglio v. DellaFave, 366 N.J. Super. 135, 139 (App. Div. 2004). Although we employ a de novo standard of review to an agency's determination that there are no genuine issues of material fact, we aim to "give substantial deference to the interpretation an agency gives to a statute that the agency is charged with enforcing." St. Peter's Univ. Hosp. v. Lacy, 185 N.J. 1, 15 (2005).

"Generally, we will not upset a State agency's determination in the absence of a showing that it was arbitrary, capricious or unreasonable, or that it lacked fair support in the evidence, or that it violated a legislative policy expressed or implicit in the governing statute." In re Camden Cty. Prosecutor,

394 N.J. Super. 15, 22-23 (App. Div. 2007) (internal quotations and emphasis omitted) (quoting Cty. of Gloucester v. Pub. Emp't Relations Comm'n, 107 N.J. Super. 150, 156 (App. Div. 1969)). Although we "must give . . . some deference to [an agency's] 'interpretation of statutes and regulations within its implementing and enforcing responsibility,' we are 'in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue[.]'" Utley v. Bd. of Review, Dep't of Labor, 194 N.J. 534, 551 (2008) (citations omitted). Thus, our review of a question of law is de novo. Mount v. Bd. of Trustees, Police & Firemen's Ret. Sys., 233 N.J. 402, 419 (2018).

"Courts cannot 'rewrite a plainly-written enactment of the Legislature nor presume that the Legislature intended something other than that expressed by way of the plain language.'" State v. Luzhak, 445 N.J. Super. 241, 245 (App. Div. 2016) (quoting O'Connell v. State, 171 N.J. 484, 488 (2002)).

Nonetheless, it is well settled that "statutes are to be read sensibly rather than literally and the controlling legislative intent is to be presumed as 'consonant to reason and good direction.'" DeLisa v. Cty. of Bergen, 165 N.J. 140, 147 (2000) (quoting Schierstead v. City of Brigantine, 29 N.J. 220, 230 (1959)). Thus,

> [i]n reading and interpreting a statute, primary regard
> must be given to the fundamental purpose for which the

legislation was enacted. Where a literal rendering will lead to a result not in accord with the essential purpose and design of the act, the spirit of the law will control the letter. This doctrine permeates our case law.

[N.J. Builders, Owners & Managers Ass'n v. Blair, 60 N.J. 330, 338 (1972).]

Although a court may not "'rewrite a plainly-written enactment of the Legislature[,]'" DiProspero v. Penn, 183 N.J. 477, 492 (2005) (quoting O'Connell, 171 N.J. at 488), a statute's words "should be interpreted in accordance with common sense in order to effectuate the legislative purpose." Morristown Assocs. v. Grant Oil Co., 220 N.J. 360, 380 (2015) (citing N.E.R.I. Corp. v. N.J. Highway Auth., 147 N.J. 223, 236 (1996)). "'[P]articular words may be enlarged or restricted in meaning by their associates and the evident spirit of the whole expression.'" Sinclair v. Merck & Co., Inc., 195 N.J. 51, 64 (1998) (quoting Salz v. State House Comm'n, 18 N.J. 106, 111 (1955)). Hence, "where a literal interpretation would create a manifestly absurd result, contrary to public policy, the spirit of the law should control." Hubbard v. Reed, 168 N.J. 387 (2001) (quoting Turner v. First Union Nat'l Bank, 162 N.J. 75, 84, (1999)).

Guided by these principles, we are persuaded by petitioners' contention that the Commissioner misinterpreted N.J.S.A. 18A:11-11 under the

circumstances of this case. See E.S. v. Div. of Med. Assistance & Health Servs., 412 N.J. Super. 340, 349 (App. Div. 2010) (citing In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006)) (holding the burden of showing that an agency acted in an arbitrary, capricious, or unreasonable manner rests on the party opposing the administrative action). We agree with the Commissioner and respondents that N.J.S.A. 18A:11-11 is unambiguous and lends itself to an interpretation in accordance with its ordinary and plain meaning. The statute provides:

> A board of education shall not renegotiate, extend, amend, or otherwise alter the terms of a contract with a superintendent of schools, . . . unless notice is provided to the public at least 30 days prior to the scheduled action by the board. The board shall also hold a public hearing and shall not take any action on the matter until the hearing has been held. The board shall provide the public with at least 10 days' notice of the public hearing.

> N.J.S.A. 18A:11-11.

We further appreciate respondents' argument that the Commissioner determined the common understandings of "amend," "renegotiate," "extend," and "alter" as referred to in the statute does not include rescission, which in this instance is "an agreement under which each party agrees to discharge all of the other party's remaining duties of performance under an existing contract."

Restatement (Second) of Contracts, § 283 (1981). However, we do not agree with the Commissioner's reasoning that respondents' action in rescinding Dyer's existing contract and agreeing to a new contract defines the transactions as a rescission, which allows the Board to avoid the public notice and public hearing requirements of N.J.S.A. 18A:11-11.

The statute was passed as part of an omnibus set of legislation introduced by Governor Jon Corzine, "concerning school district accountability, revising various parts of the statutory law, and supplementing Title 18A . . . ." P.L. 2007, c. 53, § 5 (Mar. 15, 2007). The legislation was explained to

> set[] new rules to bring increased openness and transparency to the budgeting process for schools and municipalities. All municipal budgets and municipal employee salary changes are required to be posted online. Budgets posted online must be accompanied by a user friendly plain language guide. Additionally, all compensation, benefits, separation benefits, and contract terms for school superintendents, assistant superintendents, and school business administrators must be clearly disclosed to the Commissioner of Education and will be made available for public review.
>
> [N.J. Gov. Message, 2007, S.B. 20 (emphasis added.)]

It is therefore apparent that N.J.S.A. 18A:11-11 was enacted to provide greater transparency between the public and boards of education with respect to

employment contracts of particular school district positions, including the superintendent, before the contracts expired.

The Legislature's clear mandate in the statute was the dual purpose of public notice and a public hearing when a board of education renegotiates, extends, amends, or alters an existing contract with its superintendent. That is exactly what occurred here. Upon being advised that Dyer's salary could be raised due to an increase of the Department's cap on superintendents' salaries, respondents negotiated a higher salary, an extended employment term and additional vacation time for Dyer. The fact that they mutually "rescinded" Dyer's existing contract should not circumvent the statute's requirements, regardless of Dr. Richens' email instruction.

We also find instructive, as argued by respondents, that N.J.A.C. 6A:23A-3.1(c)(1) provides that the mandatory requirements of public notice and public hearing under N.J.S.A. 18A:11-11, "shall not apply to new contracts, including contracts that replace expired contracts" for existing superintendents[1] "when an 'existing contract' is renegotiated, extended, amended, or otherwise altered[.]" Dyer's existing contract had not expired when it was "rescinded." She was not

---

[1] The regulation, like N.J.S.A. 18A:11-11, also covers deputy superintendents, assistant superintendents, and school business administrators. N.J.A.C. 6A:23A-3.1(a), (c)(1).

13

a newly appointed superintendent with a "new contract" when the Board approved the changes to her terms and conditions of employment at its meeting on September 19, 2017. Thus, the regulation suggests that since Dyer's contract had not expired, she and the Board remained under the purview of N.J.S.A. 18A:11-11, despite their "rescission" strategy.

Tellingly, Dyer, after Dr. Richens had already approved her proposed employment contract and only a few days prior to the date of the Board's September 19 meeting, submitted a revised proposed contract, which reduced her employment term from five years to three years out of apparent concern that the longer term might not receive Board approval. This obviously leaves one to wonder what may have occurred had the public notice of the proposed contract been given and a public hearing been provided.

Simply put, to classify the mutual termination of Dyer's existing employment contract as a "rescission" to avoid the public notice and public hearing requirements of N.J.S.A. 18A:11-11 would effectively nullify the legislative intent and spirit of the law. Respondents, as well as every other board of education and employee covered under the statute, could agree to "rescind" an existing contract and negotiate new contract terms to sidestep the statute's goal of transparency. This would constitute the absurd result of allowing

respondents to "rescind" a superintendent's contract to thwart public debate because the word "rescind" or its derivative was not included in the statute, despite the fact that parties essentially renegotiated, amended, or altered an existing contract to enter into a new contract. While we cannot insert words in a statute to alter the Legislature's intent, we have interpreted N.J.S.A. 18A:11-11, such that the legislature's clear intent is fulfilled when respondents – triggered by the ability to increase Dyer's salary – terminated Dyer's employment contract before it was due to expire and agree to new employment terms.

To the extent we have not addressed any arguments, it is because they are without sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(1)(E).

For the foregoing reasons, we reverse. The Board's September 19, 2017 approval of Dyers' contract is overturned. The Board is directed to vote on a new employment contract covering Dyer's employment from July 1, 2017, to June 30, 2020, subject to satisfying the public notice and public hearing requirements of N.J.S.A. 18A:11-11, as well as any other governing law.

Reversed. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4885-17T1