**Albert John FERN, Jr., John T. Flannagan, Robert Jeffrey, Donnald Koppenhaver, James H. Powell, Robert Louis Stirm, Max E. Thompson, Jack Trahan and David E. Walentowski, Plaintiffs–Appellants,**

v.

**The UNITED STATES, Defendant–Appellee.**

No. 89–1106.

United States Court of Appeals, Federal Circuit.

July 16, 1990.

Mattaniah Eytan, Kaplan, Russin, Vecchi & Eytan, of San Francisco, Cal., argued for plaintiffs-appellants.

Martha H. DeGraff, Dept. of Justice, of Washington, D.C., argued for defendant-appellee.

John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director and Mary Mitchelson, Assistant Director, Commercial Litigation Branch, Dept. of Justice, of Washington, D.C., were on the brief for defendant-appellee. Also on the brief was Ralph E. Avery, Office of the Judge Advocate General, Dept. of the Army, Washington, D.C., of counsel..

Before NIES, Chief Judge *, NEWMAN and ARCHER, Circuit Judges.

---

* Chief Judge Nies assumed the position of Chief Judge on June 27, 1990.

NIES, Chief Judge.

This appeal is from the final judgment of the United States Claims Court, *Fern v. United States*, 15 Cl.Ct. 580 (1988) (Lydon, J.), dismissing a complaint which sought just compensation under the Fifth Amendment to the United States Constitution arising from or as a result of the enactment of the Uniform Services Former Spouses Protection Act, Pub.L. No. 97–252, 96 Stat. 718 (1985) (codified at 10 U.S.C. § 1408(c)(1)(1988)) (hereinafter "the Act" or "FSPA"). Appellants are retired members of the armed forces each of whom receive retired pay by reason of at least 20 years of satisfactory active duty service in the military. Each appellant seeks compensation from the United States for the portion of retired pay which his former spouse has been awarded pursuant to a divorce decree. Appellants attribute their deprivation of part of their retired pay to the change made by FSPA in federal law. On cross-motions for summary judgment, the Claims Court held that FSPA did not effect a "taking" by the United States of appellants' property for public use within the meaning of the Fifth Amendment. We affirm.

I

Background

This appeal requires consideration of the interplay between the divorce laws of certain community property states and the federal statutes relating to military retired pay. The parties do not distinguish between specific state community property laws and, therefore, we will simply refer to California law.[1]

California treats property acquired during marriage as community property. When a couple divorces in that state, community and quasi-community property is divided equally between the spouses while each spouse retains full ownership of any separate property. In California, pension benefits are deemed property and, to the extent accrued during marriage, such prop-

erty belongs to both spouses, as community or quasi-community property. California has applied these principles to military retired pay benefits the same as to any pension benefits and, upon divorce, has divided the benefits between the spouses, *pro tanto*. *See McCarty v. McCarty*, 453 U.S. 210, 216–18, 101 S.Ct. 2728, 2732–34, 69 L.Ed.2d 589 (1981); *In re Marriage of Fithian*, 10 Cal.3d 592, 111 Cal.Rptr. 369, 517 P.2d 449 (in bank), *cert. denied*, 419 U.S. 825, 95 S.Ct. 41, 42 L.Ed.2d 48 (1974); *cf. Cearley v. Cearley*, 544 S.W.2d 661 (Tex.1976). In *Fithian*, the Supreme Court of California rejected the argument that, by federal statute, military retired pay had to be treated as the separate property of the retiree notwithstanding that community property laws of a particular state generally required division of pension benefits. At the same time, Alaska, another state which also treats pension benefits as marital property, took the view that federal law regarding military retired pay *did preempt* state law, and prevented an award of any part of military retired pay to the ex-spouse of the service member. *See Cose v. Cose*, 592 P.2d 1230, 1232 (Alaska 1979). In *McCarty*, the Supreme Court resolved this conflict, holding that the federal statutes then governing military retired pay preempted state law and prevented state courts from treating military retired pay as marital property.

In direct response to the *McCarty* decision, Congress enacted FSPA which, in section 1408(c)(1), authorizes state courts to treat disposable retired pay as property solely of the retiree or as property of the retiree and his spouse. To this extent, the Act removed federal preemption retroactively to June 25, 1981, the day before the *McCarty* decision. *See Mansell v. Mansell*, —— U.S. ——, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989).

All of the appellants here had received divorce decrees prior to the passage of FSPA. However, appellants classify themselves into three groups: (A) "final-decree"

---

1. The appellants' divorces were granted under the laws of California, New Mexico, Texas or Washington.

plaintiffs who had received divorce decrees that specifically refused to divide military retired pay with a spouse in view of *McCarty;* (B) "omitted-asset" plaintiffs where the decrees did not refer to retired pay; and (C) "pre-McCarty" plaintiffs whose decrees had divided retired pay, pursuant to a state's community property law, but who had stopped paying after the *McCarty* decision. Former spouses of (A) and (B) class plaintiffs successfully petitioned their respective divorce courts to reopen and modify outstanding final decrees to give them a right to proportionate shares of their husband's benefits. The former spouses of class (C) plaintiffs successfully brought enforcement proceedings on the original decrees after the enactment of FSPA. While there are factual differences between the groups, the differences are not legally significant to the arguments advanced for reversal of the Claims Court and, except where the text indicates otherwise, the same analysis is applied to all claimants. For convenience, we refer to all claimants as "Fern".

Fern's position is that the division of his retired pay benefits, albeit directly resulting from a state court decree, was made possible only by passage of FSPA. In Fern's view, the Act constitutes a taking of his property by the United States for which compensation must be paid under the Fifth Amendment. Fern identifies the "taken property" variously as his interest in the "final judgment" which was reopened because of the Act; "property entitlements of a final judgment"; "fully earned retired pay"; "vested property rights [in the] entirety of his retired pay"; and "impair[ment]" or "alteration of plaintiff's contractual rights" or "entitlements." The statute is constitutional, per Fern, but the government must pay the cost of the past and future benefits conferred on the former spouses by FSPA, not the retirees. In its simplest terms, Fern asks us to require the government to pay up to a pension and a half.

The government argues that Fern has not established a "taking" by the United States; that the challenged statute merely abrogates federal preemption of state law

and allows state courts to apportion military retired pay benefits between spouses; that Fern has no property interest in federal preemption of state law; and that, if the statute were to be construed as directly reducing the amount of Fern's retired pay, Fern has, in any event, no property interest in the level of that pay. Accordingly, the government urges us to uphold the judgment of the Claims Court.

## II

### Issue

Is the United States required to pay just compensation under the Fifth Amendment to the extent of the economic effect on a retiree personally, resulting from a state court divorce decree following the withdrawal of federal preemption of state community property laws respecting military retired pay?

## III

### Opinion

The statute with which we are concerned, 10 U.S.C. § 1408(c)(1) (1988) provides specifically in pertinent part:

Subject to the limitations of this section, a court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court.

No facile formula is available for making the determination of whether a governmental "taking" of private property for public use has occurred within the meaning of the Fifth Amendment. *Connolly v. Pension Benefit Guar. Corp.,* 475 U.S. 211, 224, 106 S.Ct. 1018, 1025, 89 L.Ed.2d 166 (1986). Rather, the Supreme Court stated therein, in connection with alleged takings by statute or regulation, that it "relied instead on *ad hoc,* factual inquiries into the circumstances of each particular case." *Id.* (citing *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1005, 104 S.Ct. 2862, 2874, 81 L.Ed.2d 815 (1984); *Kaiser Aetna v. Unit-*

*ed States,* 444 U.S. 164, 175, 100 S.Ct. 383, 390, 62 L.Ed.2d 332 (1979)). However, the Court "identified three factors which have particular significance in reaching a determination: (1) the economic impact of the [statute] on the claimant; (2) the extent to which the [statute] has interfered with distinct [and reasonable] investment-backed expectations; and (3) the character of the government action." *Id.* at 224–25, 106 S.Ct. at 1025–26 (internal quotation marks omitted). *See Monsanto Co.,* 467 U.S. at 1005, 104 S.Ct. at 2874; *PruneYard Shopping Center v. Robins,* 447 U.S. 74, 82–83, 100 S.Ct. 2035, 2041–42, 64 L.Ed.2d 741 (1980); *Penn Cent. Transp. Co. v. New York City,* 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978). As an initial matter, we note that both parties assume that when a statute or regulation does effect a taking without compensation which falls within the proscription of the Fifth Amendment, the remedy is compensation for the taking rather than a declaration that the statute is unconstitutional. Indeed, Fern insists that FSPA is constitutional although it would be unconstitutional, per Fern, if the government does not pay the amount "taken" from him by the divorce decree.

We do not find the case law so clear with respect to when a statute should be voided as violating the constitutional bar and when the availability of a Tucker Act claim would save the statute. *Compare Hodel v. Irving,* 481 U.S. 704, 107 S.Ct. 2076, 95 L.Ed.2d 668 (1987), with *Preseault v. ICC,* ― U.S. ―, 110 S.Ct. 914, 924, 108 L.Ed.2d 1 (1990). The availability of a Tucker Act remedy, here, may not afford the full relief requested by Fern with respect to past and future payments to his wife. It would require a rewriting of the statute to effectuate the system Fern seeks

to have implemented, namely payment into the future of Fern's full amount of retired pay to him plus the amount of his ex-spouse's share as an addition thereto. However, in view of our ruling that there has been no taking by the United States, we need not decide whether the future relief Fern seeks would be appropriate.[2]

Before applying the above-quoted *Connolly* guidelines to determine whether a "taking" has occurred, it is necessary to analyze Fern's asserted "property." In effect, Fern argues that part of his military retired pay has been taken by FSPA because the benefits he receives must be divided with his wife. Fern's theory intermixes two separate and distinct bundles of rights—his right to military retired pay vis-á-vis the government, a matter of federal law, and ownership of assets of a marriage vis-á-vis a former spouse, a matter of state law—into a single sheaf.

With respect to Fern's entitlement to retired pay vis-á-vis the government, FSPA had no effect. Fern's "entitlement" against the government remained exactly the same before and after FSPA. Nothing was "taken" or "diminished" from the amount of military retired pay to which he was or may become entitled under federal law. It is immaterial whether such rights are deemed vested statutory rights, purported contractual obligations, or investment-backed expectations: Fern's asserted rights to benefits *from* the federal government have been fully satisfied and remain intact.

What has been affected by FSPA concerns ownership of military retired pay between Fern and his former spouse. Unless preempted, the laws of the states determine whether such retirement payments must be shared by marriage partners. Under the law of California and the other

---

**2.** A computation of a lump sum evaluation of future payments (as an alternative to continuing future payments) would appear nebulous inasmuch as a military member has no entitlement to any continued level of retirement pay. Congress may alter and even eliminate military retired pay benefits whether classified as "current pay for reduced current services" or pension benefits. *See Hisquierdo v. Hisquierdo,* 439 U.S. 572, 575, 99 S.Ct. 802, 805, 59 L.Ed.2d 1 (1979)

(pension benefits); *see also Atkins v. Parker,* 472 U.S. 115, 129–30 & n. 32, 105 S.Ct. 2520, 2528–29 & n. 32, 86 L.Ed.2d 81 (1985) (pension benefits); *United States v. Larionoff,* 431 U.S. 864, 879, 97 S.Ct. 2150, 2159, 53 L.Ed.2d 48 (1977) (reduction in pay); *Costello v. United States,* 587 F.2d 424, 426 (9th Cir.1978) (*en banc*), *cert. denied,* 442 U.S. 929, 99 S.Ct. 2858, 61 L.Ed.2d 296 (1979) (reduction in pay).

community property states involved here, *individual* pension benefits, accrued as a result of a spouse's employment during the marriage, are deemed the property of *both* spouses equally, to the extent accrued during the marriage. Thus, appellants had no ownership right in the *entirety* of their military retired pay vis-á-vis their spouses. A spouse, upon divorce, simply was barred from receiving a share of that asset, which the state otherwise would have recognized as her property, by the preemptive effect of the federal law. *See McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981); *see also Mansell v. Mansell,* —— U.S. ——, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989) (federal law continues to preempt division of military *disability* pay).

The lifting of that federal bar did not have the character or effect of a partial transfer of an appellant's military retired pay to his wife by the United States. That occurred only because a particular state in a particular divorce proceeding acted affirmatively to recognize the spouse's right to receive a share of her husband's retired pay as property of the marriage under state law.[3] It is true that Congress expected community property states would be likely to take steps to divide military retired pay between spouses under divorce decrees after enactment of FSPA. However, we cannot agree that the award of benefits to Fern's former spouse by the state became an act of the United States because Congress was aware that the community property states could take this action if Congress lifted the bar of preemption. Nor is the United States the actor with respect to the retroactive application of state law to payments Fern received after June 25, 1981. While allowing state law to be applied retroactively, FSPA itself had no direct effect, retroactive or other-

wise, on division of the payments.[4] This decision was left entirely up to each state.

While Fern does not openly assert that he has a property right in continued federal preemption of state law, essentially that is a stick he would have to have in his bundles of rights to bar his former wife from sharing in his military retired pay. Lest there be any question, we reject the idea that continued preemption is a property right either as part of Fern's rights as against the government or his rights as against his wife. *Cf. Duke Power Co. v. Carolina Env. Study Group*, 438 U.S. 59, 88 n. 32, 98 S.Ct. 2620, 2638, n. 32, 57 L.Ed.2d 595 (1978); *New York Cent. R.R. v. White*, 243 U.S. 188, 197–98, 37 S.Ct. 247, 250–51, 61 L.Ed. 667 (1917); *Second Employers' Liability Cases*, 223 U.S. 1, 50, 32 S.Ct. 169, 175, 56 L.Ed. 327 (1911); *Munn v. Illinois*, 94 U.S. 113, 134, 24 L.Ed. 77 (1876) ("a person has no property, no vested interest, in any rule of common law. Rights of property which have been created [by common law] may not be taken away without due process; but the law itself, as a rule of conduct, may be changed at the will or even at the whim, of the legislature, unless prevented by constitutional limitations.").[5]

Summarizing the application of the three pronged test of *Connolly* (and other Supreme Court precedent) to Fern's "property" rights in retired pay, we conclude that the FSPA has no economic impact on Fern's rights to military retired pay vis-á-vis the United States and is at best an indirect cause of the reduction in the amount of retired pay he may keep for himself under his divorce decree. The action of the United States in enacting FSPA was correctly characterized by the Claims

---

**3.** California enacted a special statute to allow reopening of final decrees for this purpose. *See* Cal.Civ.Code § 5124 (Deering 1984) (repealed by its own terms Jan. 1, 1986).

**4.** We express no opinion on whether retroactive application of formerly preempted state law constitutes a taking by the state. Indeed, the legal effect of FSPA was not to abrogate completely the ban of federal preemption, but only

to lift it as of June 25, 1981. Prior to that date, per *McCarty*, presumably preemption remains in effect.

**5.** Similarly, we reject the idea that any "property" right in the finality of a divorce decree was taken *by the United States* inasmuch as the subject divorce decrees were reopened pursuant to state action. *See, e.g.,* Tex.R.Ct. 329b; N.M.R. Civ.P. § 1–060; Wash.Ct.R. 60(b).

Court as a lifting of federal preemption of state law. That is not the kind of action which falls within the concepts of a "taking" of property.

## IV

### Conclusion

For the foregoing reasons, we hold that the United States has not taken Fern's property by enactment of FSPA. Accordingly, the judgment of the United States Claims Court is

AFFIRMED.

NEWMAN, Circuit Judge, concurs in the result.